904 S.W.2d 695 (1995)
In the Matter of J.P.O., a Child.
No. 13-94-586-CV.
Court of Appeals of Texas, Corpus Christi.
April 24, 1995.
Rehearing Overruled June 1, 1995.
*697 Cynthia T. Sheppard, Houston, Marek & Griffin, Victoria, for appellant.
George J. Filley, III, Dist. Atty., Brian D. Hendrix, Asst. Dist. Atty., Victoria, for appellee.
Before the court en banc.

OPINION
SEERDEN, Chief Justice.
Appellant, J.P.O., a juvenile, was charged with burglary when he was sixteen years old. He appeals from an order by which a juvenile court waived its exclusive, original jurisdiction and transferred his case to criminal district court. By three points of error, J.P.O. contends the court made erroneous evidentiary rulings at the transfer hearing and he challenges the legal and factual sufficiency of the juvenile court's finding of probable cause and finding that the seriousness of the offense requires the juvenile's transfer for the welfare of the community. We affirm.
A juvenile court may waive its exclusive, original jurisdiction and transfer a child to the appropriate district court for criminal proceedings if the child is alleged to have committed a felony and was aged fifteen or older at the time of the alleged offense. Tex.Fam.Code Ann. § 54.02(a) (Vernon Supp.1994). When considering whether to transfer its jurisdiction, the court must conduct a full investigation and hearing. Id. Before conducting the transfer hearing, the juvenile court shall order and obtain a certification investigation report. This report consists of a complete diagnostic study, social evaluation, and full investigation of the child, his circumstances, and the circumstances of the alleged offense. Tex.Fam.Code Ann. § 54.02(d) (Vernon 1986). The purpose of a hearing conducted pursuant to 54.02 is not to determine guilt or innocence but to determine whether the juvenile's and society's best interest is served by maintaining juvenile custody of the child or by transferring him to a criminal district court. After reviewing these reports and after the hearing, the juvenile court then determines whether there is probable cause to believe that the child committed the offense alleged, and, that because of the seriousness of the offense, or, the background of the child, the welfare of *698 the community requires criminal proceedings. Id. In making its decision, the juvenile court shall consider, among other matters, the following:
1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person; 2) whether the alleged offense was committed in an aggressive and premeditated manner; 3) whether there is evidence on which a grand jury may be expected to return an indictment; 4) the sophistication and maturity of the child; 5) the record and previous history of the child; and 6) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.
Tex.Fam.Code Ann. § 54.02(f) (Vernon 1986).
Absent a showing of an abuse of discretion, the appellate court will not disturb the trial court's findings. In re J.S.C., 875 S.W.2d 325, 326 (Tex.App.Corpus Christi 1994, writ dism'd); In re D.W.L., 828 S.W.2d 520, 525 (Tex.App.Houston [14th Dist.] 1992, no writ).
In its order, the court stated that, among other things, it had considered the factors required by Family Code section 54.02(f). The court's waiver order then states, "After conducting such full investigation, including evidence and argument of counsel, the Court finds that the welfare of the community requires criminal proceedings because of seriousness of offense, that there is probable cause to believe that the child committed the offense of Burglary of a Habitation ..." The court's order continues stating,
This Court is hereby waiving its exclusive, original jurisdiction for the following reasons:
1. There is evidence in which a grand jury may be expected to return an indictment.
2. The child is sophisticated and mature enough to understand right from wrong and the consequences of his actions.
3. The prospects of adequate protection of the public and the likelihood of rehabilitation of the child by use of procedures, services, and facilities are currently not available to the juvenile court. The child did not comply with a term in an informal probation/adjustment.
4. The alleged offense occurred at approximately 2 AM in the victim's home when the victim was at home and indicating a premeditated manner.
From our review of the record, the incident at issue occurred on April 26, 1993. The victim, Mr. Kalmus, testified that he was asleep when at approximately 2:15 to 2:30 a.m., he was awakened by noises in his kitchen. He went to see what was causing the noise and he came upon two men in his kitchen. Kalmus noticed that one man had the coffee pot and the other had the microwave. Kalmus stated that when the two men saw him come in from the living room, one said to the other, "let's go." One man dropped the coffee pot and ran out of the house while the other man ran out of the house with the microwave. Kalmus ran after them. Kalmus testified that he did not recognize J.P.O. at the split moment when he saw the two men in his kitchen. Kalmus stated that when he ran after the men, he soon tackled one of them in his neighbor's yard. The man he tackled was Frank Rivera who, Kalmus stated that when he had him pinned down and was trying to subdue him, hollered out for "Jerry." When Jerry came back to aid Frank, that was when Kalmus recognized him as J.P.O. Kalmus stated that he struggled with the two men and he recalled that he had hit J.P.O., but the two men got away from him. Kalmus stated that he saw J.P.O. later in the morning about two blocks away from his house near J.P.O.'s house and that he had a Band-Aid over his left eye. Kalmus stated that he recognized him as the same person he had seen the night before.
On cross-examination, J.P.O.'s attorney challenged his version of the facts. She reminded Kalmus that he had testified less than a year ago at a certification hearing relating to the same events. She attempted to impeach him with prior statements he made at that certification hearing. At the prior hearing, Kalmus had testified that he tackled Jerry and that the two had gotten *699 into a scuffle and that Jerry had hollered out and Frank had come to aid Jerry.
At this point in the testimony, J.P.O.'s attorney was pointing out the differences in Kalmus's previous version of the facts with what he was telling the court at this hearing. At this point it appears that Kalmus became somewhat frustrated and the following exchange occurred:
Q: Now that I've showed you the transcript from the previous hearing, do you now remember testifying differently than you've testified here today?
A: Yes.
Q: Okay.
A: I guess, I don't know. I'm about ready to go to bed. I've been up 24 hours. I'm sorry, I'm just
Q: Well, are you saying that you're not prepared to testify today?
A: That's about right. I mean I've been up 24 hours. I work night shift in Houston and
Q: And you don't have an independent recollection of the events?
A: No ma'am, not right at this present moment I do not.
At this point in the proceeding J.P.O.'s attorney made the following objection:
Your Honor, I ask to strike the testimony of this witness based on he's testified he does not remember what happened on that day, and he is not in any position to be testifying if that's true.
After the court overruled this objection, J.P.O.'s attorney continued to question Kalmus about the events surrounding the incident and he continued to answer her questions as well as the questions presented to him by the State on redirect examination. She showed him a transcript of his former testimony as did the State on redirect. Never again does the record reflect that he had trouble recalling the events or that he asserted that he had no present recollection of the facts that night.
By point of error one, J.P.O. contends that the court erred by overruling his objection to the alleged victim's testimony. J.P.O. argues that because under Texas Rule of Civil Evidence 602, a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter, it was error for the court to allow the victim to continue testifying about events of which he stated he had no present recollection.
No consistent rules regarding the admissibility of evidence have been developed for a transfer hearing, and juvenile courts often consider evidence that would be inadmissable at an adjudication hearing. In re J.S.C., 875 S.W.2d at 330. Strict rules of evidence are not applied in transfer proceedings because the weight of the evidence is judged by whether it would support an indictment for the offense, and, a grand jury, when considering an indictment, is permitted to receive evidence that would be inadmissable at an adjudication hearing or trial. Id.
We conclude that the trial court did not err by allowing Kalmus to continue testifying. In our review of the testimony, after J.P.O.'s attorney showed the victim his prior testimony, he stated that the person he had hit in his yard after the burglary was not J.P.O., but that he was at the incident. We note that it would not be unreasonable for the trier of facts to consider Kalmus' testimony as more consistent with a temporary mental lapse during the course of the hearing than an admission of a total failure to recall the incident. The juvenile court is the sole factfinder at the waiver of jurisdiction hearing and may choose to believe any or all of the witness's testimony. In re D.W.L., 828 S.W.2d at 524. The juvenile court, as the sole factfinder, is in the unique position to observe the demeanor and evaluate the credibility of the witnesses, and to select which, if any part of the testimony, to believe. Id. We overrule point one.
By point of error two, J.P.O. argues that there exists no evidence to support the juvenile court's finding of probable cause, or, alternatively, that the juvenile court's finding of probable cause was against the great weight and preponderance of the evidence.
The juvenile court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the *700 same standards as are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answers to a charge. In re G.F.O., 874 S.W.2d 729, 731-32 (Tex. App.Houston [1st Dist.] 1994, no writ). When considering a "no evidence" point of error, we look only to the evidence favorable to the judgment to determine whether there is any evidence to support the finding. In reviewing an "insufficiency point," we consider and weigh all of the evidence in the case, and, if the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust, we set aside the judgment and remand for a new trial. Id.
A person commits burglary of a habitation if he intentionally or knowingly without the effective consent of the owner enters a habitation with intent to commit a felony or theft or enters a habitation and commits or attempts to commit a felony or theft. Tex.Penal Code Ann. § 30.02(a) (Vernon 1989). Family Code section 54.02 requires the juvenile court to determine whether probable cause exists to believe the child committed the offense alleged. The juvenile court does not determine guilt or innocence at the waiver of jurisdiction hearing, but merely evaluates whether the juvenile should be tried as a juvenile or adult in subsequent proceedings. In re D.W.L., 828 S.W.2d at 524.
Probable cause is defined as sufficient facts and circumstances to warrant a prudent man to believe the suspect committed or was committing the offense. Id. Probable cause for arrest applies the same standard. Id. The probable cause standard of proof embraces a practical, common sense approach rather than the more technical standards applied in the burdens of proof of either beyond a reasonable doubt or a preponderance of the evidence. Id. (citing Gerstein v. Pugh, 420 U.S. 103, 112, 95 S.Ct. 854, 862, 43 L.Ed.2d 54 (1975)); Mayfield v. State, 800 S.W.2d 932, 934 (Tex.App.San Antonio 1990, no pet.).
Based on the evidence outlined above, we conclude that there exists sufficient evidence to support the trial court's finding of probable cause. The trial court is in the unique position to judge the weight and credibility to be given to the evidence presented at a waiver of jurisdiction hearing. We conclude that the juvenile court did not abuse its discretion in ruling that there was sufficient evidence of probable cause to believe that J.P.O. committed burglary. We overrule J.P.O.'s second point of error.
By point of error three, J.P.O. contends that the juvenile court abused its discretion in waiving jurisdiction because its finding that the seriousness of the offense requires transfer of J.P.O. to criminal district court for the welfare of the community was supported by no evidence, or, alternatively, was against the great weight and preponderance of the evidence.
Pursuant to section 54.02, the court ordered, obtained and considered a certification investigation report. Included in the certification report was a copy of J.P.O.'s Juvenile Case History maintained by the Victoria County Juvenile Services Department, and a psychological report prepared by Sean Connolly, Ph.D., psychologist.
J.P.O. was born February 7, 1977. According to his mother, the report states that he has a good attitude and is affectionate. She stated for the report that he is cooperative at times and is an efficient worker. She also stated that he does not have a bad temper and he is truthful. According to his mother, J.P.O. drinks beer and sniffs paint, and smokes cigarettes. The report submitted to the trial court from the Victoria County Juvenile Services Department reflects that J.P.O. has an extensive history of offenses which have been referred to Juvenile Services since January 1989. These referrals include nine burglaries, two motor vehicle thefts, three aggravated assaults, three abuses of a volatile chemical, three public intoxications, criminal trespass, two terroristic threats, as well as other various offenses. The report also states that he is not currently enrolled in school. He last attended the 9th grade. In the past, J.P.O. has been employed in construction and dish washing. At the current time he is unemployed.
A psychological report was also filed with the court. Dr. Connolly's report reflects that J.P.O. told him that he had been attending *701 the Adult Learning Center on and off in an effort to obtain his GED. He told Dr. Connolly that his performance in school was good and was emphatic that he had never been in special education classes and denied having any learning difficulties. Regarding his employment history, he told Dr. Connolly that he had worked as a construction worker and a dish washer in the past. He stated that he had been out of work for about a month. He stated that he gave up his last job as a construction worker when the crew was going out of town to work and he did not want to go out of town. When asked about whether he had been looking for a job, he stated that he had not and that he wanted to take a while off. The report addressed his psychological condition which reflects that he has been arrested for such offenses as getting into fights, traffic violations, and trying to break into a house. His mother stated that he has had several juvenile arrests for offenses such as stealing bikes, burglarizing a building and curfew tickets. He was first arrested when he was twelve years old. He has been in juvenile detention five times. He stated that he was sent to a juvenile facility for two months when he was fourteen years old. He denied any abuse of alcohol. He acknowledged that he used marihuana occasionally which he described as every few months. He acknowledged that he had been in a gang in the past and is now afraid of them. He suggested that there were some gangs in his neighborhood.
Dr. Connolly's evaluation of J.P.O. was that his self-expression was good, indicating adequate use of language for communicating thoughts. He was engaged in the evaluation process. There was no evidence of impairment in reasoning or judgment. His level of activity was appropriate. There was no evidence of impairment in immediate, recent, or remote memory. J.P.O.'s test results placed him in the Low Average range of intellectual functioning. His full scale IQ score was 85. In terms of non-verbal areas, his ability to follow the process of familiar social events, spatial judgment and design, and the ability to manipulate parts into a total configuration were good. Alertness to his visual environment and eye-hand coordination were low. Academic indicators show that he has had very little benefit from his educational experiences and practical intelligence is poor.
J.P.O. admitted some emotional stress, but does not perceive himself as having psychological problems. Dr. Connolly found no evidence of exaggeration, denial, excessive defensiveness or rigidity in thinking. Dr. Connolly found that his personal and social history is consistent with a maladaptive pattern of behavior consistent with dropping out of school, under achievement in school, history of arrests, use of drugs and some pattern of indifference towards pursuing important goals in life.
At the hearing, the court heard evidence from the victim and from Tom Hough, a Juvenile Probation Officer, employed by the Victoria County Juvenile Service Department, who was acquainted with J.P.O.
Hough testified and recommended to the court that J.P.O. be certified as an adult and his case transferred to criminal district court. Hough stated that J.P.O. knows right from wrong and that his actions were not the result of his failure to understand the rules of society and the consequences of violating those rules. Hough testified that adequate protection of the public and the likelihood of rehabilitation by the use of procedures, services and facilities are currently not available to J.P.O. through the juvenile system. Hough explained that J.P.O. at the time of the hearing was seventeen years old and would turn eighteen in four months. Thus, Hough continued, that would give Juvenile Services only four months to work with J.P.O. and he did not believe that would be sufficient time to address his needs or to get him any type of treatment or help for any of his problems. Hough testified that he believed that if J.P.O. were sent to the Texas Youth Commission that, because the offense was burglary of a habitation, he would probably be under their care for no more than six months before being placed on parole. Hough also testified that based on his interaction with J.P.O. at Juvenile Services, he believed that he had a substance abuse problem or alcohol problem. He explained that almost every time J.P.O. had been in trouble, alcohol was related.
*702 The juvenile court is the sole fact finder in certification hearings and may choose to believe or disbelieve any or all of any witness' testimony. In re D.W.L., 828 S.W.2d at 525. Hence, the trial court, as the sole fact finder, was in the unique position to observe the demeanor and evaluate the credibility of the witnesses, and select which, if any, to believe. Id.
Appellate asks that we weigh the testimony and the evidence in the record which was before the juvenile court giving more credence to different portions of the testimony and record evidence than the juvenile court did and make a factual determination different than the juvenile court's decision. This we will not do from an appellate perch. We review the trial court's findings and the record and consider and weigh all of the evidence presented. In re K.D.S., 808 S.W.2d 299, 302 (Tex.App.Houston [1st Dist.] 1991, no writ) (citing Cain v. Bain, 709 S.W.2d 175, 176 (Tex.1986)). Only if the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust will an appellate court set aside the juvenile court's finding. Id.
After reviewing the testimony presented at the certification hearing and the reports that were before the juvenile court, we conclude that sufficient evidence exists to support the juvenile court's findings and that the juvenile court acted within its discretion by ordering a waiver of its jurisdiction and transferring the cause to the criminal district court. A burglary of a home in the middle of the night while the residents are at home asleep is a serious offense. J.P.O. has dropped out of school, is unemployed and is not pursing work, and he has an extensive history of referrals to juvenile services. The psychological evaluation states that he has a conduct disorder and a maladaptive pattern of behavior. Dr. Connolly concluded that J.P.O. would be resistant to treatment and not motivated for counselling. His habits include smoking cigarettes, sniffing paint, and drinking beer. The report filed by juvenile services shows numerous referrals from the Victoria Police Department and the Victoria County Sherrif's Department of offenses committed by J.P.O. since January 1989. While a different conclusion might be reached, this Court will not substitute its judgment for that of the juvenile court. In re K.D.S., 808 S.W.2d at 303. We overrule point three.
We conclude that the juvenile court did not abuse its discretion by waiving its exclusive, original jurisdiction over J.P.O. We affirm the juvenile court's order.
DORSEY and RODRIGUEZ, JJ., join in majority opinion.
SHIRLEY W. BUTTS,[1] Assigned J., concurs with opinion.
CHAVEZ, J., dissents with opinion, joined by FEDERICO G. HINOJOSA, Jr. and YANEZ, JJ.
SHIRLEY W. BUTTS, Justice, Retired, concurring.
Although discretionary power rests with the juvenile court in transfer proceedings, the Texas statute contains express standards of guidance in TEX.FAM.CODE ANN. § 54.02(a) and (f). The test for abuse of discretion is not whether the facts present an appropriate case for the trial court's action, but, instead, whether the trial court acted without reference to any guiding rules and principles, or in other words, acted in an arbitrary or unreasonable manner. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). The mere fact that a trial court may decide a matter within its discretionary authority differently from what a reviewing court would does not demonstrate that an abuse of discretion has occurred. Id. at 242.
The primary safeguards against abuse of discretion in a juvenile transfer proceeding are the rights to an evidentiary hearing after proper notice, to representation by counsel, to judicial review of the record of the proceedings, and the reasons for the decision. These safeguards, founded on Kent v. United *703 States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), form the basis of the Texas statute, section 54.02.
Moreover, a juvenile is not afforded a procedural due process right of freedom from hearsay evidence at the discretionary waiver hearing. To arrive at that determination, it is important to understand the nature of the waiver hearing. Unlike the delinquency adjudication hearing, a waiver hearing is dispositional in nature. Such a hearing does not result in a determination of guilt as may a criminal trial; in short it is not an adversary proceeding. Rather, the purpose of the transfer hearing is to determine whether the best interests of the juvenile and society would be served by the retention of the juvenile court authority over the juvenile or whether the juvenile, under all the circumstances, should be transferred to be tried as an adult.
The juvenile court judge does not determine the juvenile's innocence or guilt at the certification hearing, but merely evaluates whether he should be tried as an adult in subsequent proceedings. Matter of D.W.L., 828 S.W.2d 520, 524-25 (Tex.App.Houston [14th Dist.] 1982, no writ). The higher standard of a preponderance of the evidence is not required. Section 54.02(a)(3) of the Texas Family Code indicates that the juvenile court need only determine there is "probable cause" that the juvenile committed the offense. Id. at 524. Further, the trial court can determine probable cause through the use of hearsay besides written and oral testimony. Id.
While the juvenile court is required to consider all six factors of § 54.02(f), it is not required to find each factor is established by the evidence. Matter of C.C.G., 805 S.W.2d 10, 15 (Tex.App.Tyler 1991, writ denied); Matter of K.A.H., 700 S.W.2d 782, 785 (Tex. App.Fort Worth 1985, no writ). Since there is no burden on the State to establish the guilt of the juvenile, the State does not have to prove that the juvenile committed the offense. Id. at 784.
In the present case it is not contested that there is evidence on which a grand jury may be expected to return an indictment. Section 52.04(f)(3), although the juvenile does contest the juvenile court's own finding of probable cause. The juvenile court judge stated in the order that he had considered the six factors in making the decision to transfer and, in addition to the grand jury finding, made three more findings. These findings have the same force and effect as findings of fact in any civil trial. Apparently the juvenile is not contesting two of these additional findings.
The finding that in all probability a grand jury would return an indictment does not require a final resolution of conflicting evidence demanded by the reasonable doubt or preponderance of evidence standards. "Probable cause" to believe that the juvenile committed the offense alleged, which is necessary for the juvenile court to waive its exclusive jurisdiction, is defined as sufficient facts and circumstances to warrant a prudent person to believe that the suspect had committed or was committing the offense. Matter of D.W.L., 828 S.W.2d at 524. In the present case there was sufficient evidence presented for the juvenile court to find probable cause that the offense of burglary of a habitation was committed by the juvenile in this case. The probability that a grand jury would return an indictment, i.e. find probable cause, for the offense was established by sufficient evidence.
Regarding the requisites of section 54.02(a)(1) and (2), it is undisputed that the juvenile was alleged to have violated a penal law of the grade of felony, that he was 16 years of age at the time, and that no adjudication hearing had been conducted.
Continuing to comply with those requisites, while the juvenile court could and did consider (1) that because of the seriousness of the offense the welfare of the community requires criminal proceedings,[2] the juvenile court could and did alternatively consider (2) that because of the background of the child *704 the welfare of the community requires criminal proceedings. Section 54.02(a)(3).
In this case extensive evidence of the background of the child was before the juvenile court. On appeal the juvenile does not challenge that evidence as insufficient. The juvenile court judge, as the trier of fact at the hearing, was entitled to consider the juvenile's previous unlawful actions, including his juvenile case history since 1989 of nine burglaries, two motor vehicle thefts, three aggravated assaults, abuses of chemicals, public intoxications, criminal trespass, and terroristic threats, as well as his failure to cooperate with juvenile authorities' efforts to rehabilitate him. The following findings by the court are not challenged on appeal:
2. The child is sophisticated and mature enough to understand right from wrong and the consequences of his actions.
3. The prospects of adequate protection of the public and the likelihood of rehabilitation of the child by use of procedure, services, and facilities are currently not available to the juvenile court. The child did not comply with a term in an informal probation/adjustment."[3]
Apparently J.P.O. presented no evidence of circumstances which the juvenile judge found would entitle him to the continuing benefits of the juvenile justice system. The reasons for waiver stated by the juvenile judge demonstrate that rehabilitation within the juvenile justice system had been unsuccessful.
Because the juvenile court followed the express guidelines required for the exercise of discretionary power, it cannot be said that the court acted without reference to any guiding rules or principles. Therefore, I agree that sufficient evidence exists to support the juvenile court's findings and that, under all the circumstances, the court did not abuse its discretion in waiving juvenile court jurisdiction and transferring the juvenile to the proper court for criminal proceedings.
CHAVEZ, Justice, dissenting.
A juvenile court was forced to waive its jurisdiction and transfer a juvenile to criminal district court because the juvenile system failed him. The majority has approved this transfer. I respectfully dissent.
The juvenile court found that the welfare of the community and the seriousness of the offense require waiver of its jurisdiction and transfer of the case for criminal proceedings.[1] In concluding that waiver of jurisdiction was necessary, the court made the following statement at the conclusion of the hearing: "I believe burglary is listed under Title 7, Offenses against Property. So, I have to go ahead and waive the jurisdiction in this matter. There's some findings I need to make." (emphasis added). This is an incorrect statement.
Section 54.02(a) governing waiver of jurisdiction and transfer to criminal court provides that "[t]he juvenile court may waive its exclusive original jurisdiction and transfer a child to the appropriate district court or criminal district court for criminal proceedings" if three conditions, one being that the child is alleged to have committed a felony, are met. See Tex.Fam.Code Ann. § 54.02(a) (Vernon Supp.1994). Thus, even if all three conditions are satisfied, the provision does not mandate that the juvenile court waives its jurisdiction. However, § 54.02 does mandate that the court considers the six factors enumerated in subsection (f) before deciding whether to waive jurisdiction. The court's statement, quoted above, indicates that it had already decided to waive jurisdiction, based primarily on the burglary charge, before it *705 had even considered the § 54.02(f) factors. In doing so, the court acted beyond its scope of discretion.
Nevertheless, in its Order Waiving Jurisdiction, the court stated that it had considered all six factors and made the following findings:
1. There is evidence in which a grand jury may be expected to return an indictment.
2. The child is sophisticated and mature enough to understand right from wrong and the consequences of his actions.
3. The prospects of adequate protection of the public and the likelihood of rehabilitation of the child by use of procedures, services, and facilities are currently not available to the juvenile court. The child did not comply with a term in an informal probation/adjustment.
4. The alleged offense occurred at approximately 2 AM in the victim's home when the victim was at home and indicating a premeditated manner.
A. Seriousness of the offense
The offense was burglary of a habitation. In A.T.S., the court was presented with the same issue as here. The juvenile was charged with burglary of a habitation. The burglarized home was ransacked and items were thrown about or turned over. Entry was obtained by kicking and breaking a window in order to open a door.
The court held that A.T.S. committed a crime of a juvenile nature with no aggression or harm directed to the person of any individual. A.T.S. v. State, 694 S.W.2d 252, 256 (Tex.App.Fort Worth 1985).
Here, J.P.O. was also charged with burglary of a habitation. Douglas Kalmus, the owner of the house, found J.P.O. and another youth in his kitchen with appliances in their hands. When confronted, the two fled from the house. Kalmus chased after them, tackled one, and a struggle ensued. There was no evidence of forced entry or that the two youths had weapons. Compared to A.T.S., the charged offense qualifies as one of a juvenile nature. No aggression or harm was directed at an individual during the commission of the burglary; harm occurred afterwards when Kalmus attempted to detain J.P.O. and his companion as they fled from the house. The offense was not of such a serious nature as to require criminal proceedings.
B. Grand jury indictment
A person commits burglary of a habitation if, without the effective consent of the owner, he enters a habitation with intent to commit a felony or theft or enters a habitation and commits or attempts to commit a felony or theft. Tex.Penal Code Ann. § 30.02(a) (Vernon 1989). Kalmus testified that he confronted the two youths holding appliances in his kitchen. They were there without his permission. Kalmus identified J.P.O. as one of the two. The evidence supports the trial court's finding that a grand jury may be expected to return an indictment.
C. Sophistication and maturity
J.P.O. was sixteen years old at the time of the offense and dropped out of school after the ninth grade. The psychological evaluation reported J.P.O.'s intelligence as low average with an IQ of 82-85. The psychologist found that his academic achievement was equivalent to that of a fourth to sixth grade level, and that the data implicate possible cerebral dysfunction. Academic indicators show that he has had very little benefit from his educational experiences and practical intelligence is poor. J.P.O.'s self-expression was good, indicating adequate use of language for communicating thoughts. There was no evidence of impairment in reasoning or judgment. The report further found that J.P.O. acted impulsively, exercised poor judgment, and tested low in social adjustment. Moreover, the report did not state that J.P.O. knows right from wrong or that he knew that burglarizing a home was wrong. However, Tom Hough, a juvenile probation officer, testified that J.P.O. does know right from wrong and that his actions were not the result of his failure to understand the rules of society and the consequences of violating those rules.
*706 D. Adequate protection of public and likelihood of rehabilitation in juvenile system
The juvenile court found that the prospects of adequate protection of the public and the likelihood of rehabilitation of the child by use of procedures, services, and facilities are not available to the juvenile court. The offense occurred in April 1993. Petition to transfer for criminal proceedings was filed in July 1994, and a hearing was held in October 1994. During this fifteen to eighteen month period, J.P.O. was living in the community, apparently without juvenile court supervision. Yet, four months before his eighteenth birthday, and without provocation, why is there now a concern that the public needs to be protected from J.P.O.? After J.P.O. was arraigned, the court allowed him to be released on a $5,000 personal bond. Evidently, the court did not believe that there was a great risk of flight or that J.P.O. posed a threat or danger to the public.
What was J.P.O.'s likelihood of rehabilitation through the juvenile court system? At the hearing, Hough testified that since J.P.O. would turn eighteen in four months, Juvenile Services had only four months to work with J.P.O., which he felt was insufficient time to "address any of his needs or to get him any type of treatment or help for those needs." Hough further stated, "I don't believe there is a lot we can do with him in four months."[2] However, Juvenile Services had eighteen months prior to the hearing during which time they could have attempted to address his needs but failed to do so. The procedures, services, and facilities of Juvenile Services were certainly available at that time; yet, there is no evidence in the record to indicate that these resources were offered to J.P.O. for his rehabilitation.
The court also noted that J.P.O. did not comply with a term of his informal probation. Hough stated that during the time J.P.O. was on informal probation, he satisfactorily completed that probation. On two occasions, J.P.O. received treatment for his alcohol problem. Nevertheless, the court's finding was based on Hough's testimony that J.P.O. refused to voluntarily attend a drug counselling program. The decision to attend is an optional one and not a "term" of informal probation that requires compliance as would be required under formal probation. J.P.O. has never been adjudicated and placed on formal probation which would have imposed restrictive terms upon J.P.O. and provided him with the supervision that Hough believes he needs but cannot obtain through the Texas Youth Commission.
E. Premeditation
The court found that the burglary was committed in a premeditated manner because it occurred at approximately 2:00 a.m. in the victim's home when the victim was in the house. This is insufficient evidence to establish premeditation. An entry that is made without the consent of the owner and in the nighttime is presumed to have been made with the intent to commit theft. Shelby v. State, 479 S.W.2d 31, 41 (Tex.Crim.App. 1972); Guerra v. State, 657 S.W.2d 511, 513 (Tex.App.Corpus Christi 1983, pet. ref'd). However, such a presumption does not extend to the establishment of premeditation. Hence, the fact that the two youths were present in Kalmus' home without his consent at 2:00 a.m. is insufficient to support a finding of premeditation. Additionally, the psychological report indicated that J.P.O. tended to act impulsively. He and the other youth could have been out and about and decided to take items from the house they were passing by at that time. There is no evidence that a weapon or tool was used to gain entrance into the residence.
Based upon our review of the evidence, we find that there is some evidence to support the court's findings as to some of the enumerated factors. Overall, however, the finding that J.P.O. should be transferred to the criminal district court is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust, and thus, an abuse of discretion. The evidence establishes that the public would be adequately protected, and that J.P.O. could be rehabilitated by retaining him within the jurisdiction of the juvenile system. Accordingly, *707 I would reverse the juvenile court's decision.
FEDERICO G. HINOJOSA, Jr. and YANEZ, JJ., join in the dissenting opinion.
NOTES
[1] Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 and 75.002 and Rule 79(d), Texas Rules of Appellate Procedure.
[2] Burglary of a habitation is a second degree felony. TEX.PENAL CODE ANN. § 30.02(a)(1), (c)(2). It is established law that breaking into a house is a serious offense, until recently a first degree felony, and when committed at night the intent to commit theft is presumed.
[3] It is generally known that Texas juvenile probation departments, in working with juveniles who may be amenable to rehabilitation, are granted the court's permission to place those juveniles on "informal probation" with less stringent supervision requirements on the juveniles than those imposed by court-ordered probationary terms. This is usually done in cases of first-time non-violent offenders.
[1] The majority and concurrence dwell extensively on the child's background. The record shows that the child had been arrested numerous times, but that the charges had been dismissed because of a lack of evidence. However, while the trial court said it had considered the record and previous history of the child, it evidently did not find the child's background to be a significant factor in its decision since it is not a stated reason for the court's transfer of jurisdiction.
[2] Hough's statement is not surprising. The juvenile system had not done much for J.P.O., if anything, despite his lengthy arrest record which began in 1989.