COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 




 
 
  
  
  
  
 IN
 THE MATTER OF R.R.G., A JUVENILE.
  
                              
  
  
  
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
 No. 08-01-00434-CV
  
 Appeal from the
  
 County Court at Law No. 1
  
 of Midland County, Texas
  
 (TC# JO4596)
 
 




 

O
P I N I O N

R.G. appeals from the adjudication
and commitment order of the juvenile court committing him to custody and care
of the Texas Youth Commission.  We
affirm.

                                                                         Facts

On April 4, 2000, R.G. was
adjudicated delinquent and was placed on juvenile probation after committing
the burglary of a habitation in November 1999. 
At the time of the adjudication, R.G. had just turned twelve.  R.G. was placed on probation in the home of
his mother for one year, subject to extension, and required to report to the
Midland County Juvenile Probation Department.








On March 19, 27, and April 9, 2001,
the State filed a series of motions to modify the terms of R.G.=s probation.  It is the Second Amended Motion to Modify
Disposition (Athe Motion@) that is at issue in this
appeal.  It alleges that R.G. engaged in
delinquent behavior by participating in a series of burglaries of habitations,
by operating a motor vehicle without the consent of its owner, by testing
positive for marijuana use, by associating with persons banned by the terms of
his probation, by resisting arrest by a peace officer, by failing to report to
his probation officer, and by failing to pay his probation fees.  R.G. pleaded not true to the Motion.

On July 31, 2001, a contested hearing
was held concerning the Motion.  The
State presented seven witnesses; R.G. presented one.  At that time, the State dismissed several of
the allegations against R.G.  Instead, it
proceeded on the allegations of the January 29, 2001 attempted burglary of a
habitation; the December 15, 2000 and January 29, 2001 burglaries; the failure
to report; and the failure to follow the terms of his probation by associating
with another probationer.








The State=s first witness was Michael Wallace,
the justice of the peace who administered the Juvenile Magistrate=s Warnings (the Warnings) to R.G.
following his arrest for the burglary of a habitation on January 29, 2001, and
his arrest for burglary of a residence and auto theft on January 30, 2001.  Wallace testified that his written record of
the Warnings given R.G. was accurate and that R.G. had understood the Warnings
at the time they were administered. 
Wallace also testified that a peace officer was present in the room when
the Warnings were administered.  R.G.
objected to the introduction of the written Warnings asserting that they did
not conform with the admonitory language required by statute.  The objection was overruled.

The State also called Detective Mark
Wohleking who was present when R.G. was given the Warnings and to take R.G.=s statement concerning the January
29, 2001 burglary.  Wohleking identified
and authenticated a tape that was made of R.G.=s appearance before Wallace and R.G.=s inculpatory statement.

Over defense objection, the tape was
played in its entirety.  The tape
includes both the Warnings as administered by Wallace and R.G.=s oral confession to Wohleking that
he committed the burglary of a habitation on December 15, 2000 and January 29,
2001.   R.G.=s confession was corroborated when
detectives discovered items in R.G.=s bedroom that had been taken in the
course of the burglaries.  The tape was
the State=s only evidence with regard to the
January 29, 2001 attempted  burglary.

As part of his probation terms, R.G.
was forbidden to associate with probationer J.P.R.  J.P.R. testified he met with R.G. on two
occasions after both he and R.G. were placed on probation.

Jeff Leyva, R.G.=s probation officer, testified that
R.G. failed to report to him once during the course of his probation.  He also testified that to the best of his
knowledge, R.G. owed $40 in probation fees. 
Leyva=s recommendation to the court was
that R.G. should be sent to the Texas Youth Commission if any of the
allegations in the Motion were found to be true.








The trial court held that the
allegations against R.G. were proven true. 
Prior to modifying R.G.=s disposition, the trial court heard further testimony from
Leyva, R.G.=s probation officer.  Leyva again recommended that R.G. be sent to
the Texas Youth Commission.  Although he
admitted that Boot Camp could have been an alternative setting for R.G., Leyva
felt that the Texas Youth Commission was a better setting for R.G. because he
could be supervised until age 21 and would be offered more services and
supervision than other placements such as Boot Camp.  A neighbor of R.G.=s also testified that he saw R.G.
smoking pot with friends.

Based on the evidence adduced at the
hearing, the trial court held that it was in R.G.=s best interest that he be sent to
the Texas Youth Commission (TYC) for a minimum of nine months.  In its Report of Progressive Sanctions
Deviation, the trial court found basis in twelve out of a possible seventeen statutorily
recognized reasons for deviating from the progressive sanctions guidelines.

On July 31, 2001, the trial court
signed its adjudication and commitment order. 
R.G. timely filed a motion for new trial which was denied as a matter of
law.  This appeal timely followed.

Presence
of police officer during warnings








In R.G.=s first point of error, he maintains
that the oral statement used against him at the contested hearing was
improperly admitted because the Warnings given to R.G. by Wallace were tainted
by the presence of a peace officer. 
Texas Rule of Appellate Procedure 33.1 mandates that an issue is
properly preserved for appeal only when the record demonstrates the issue was
raised with the juvenile court.  In re
C.C., 13 S.W.3d 854, 859 (Tex. App.--Austin 2000, no pet.); Tex. R. App. P. 33.1.

In this case, R.G.=s only objection at trial to the
introduction of his oral statements was that Wallace=s Warnings violated section
51.095(a)(1)(A)(iii).  That section
provides: 

(a)
Notwithstanding Section 51.09, the statement of a child is admissible in
evidence in any future proceeding concerning the matter about which the
statement was given if:

(1) the
statement is made in writing under a circumstance described by Subsection (d)
and:

(A) the
statement shows that the child has at some time before the making of the
statement received from a magistrate a warning that:

.   .   .

 

(iii) if
the child is unable to employ an attorney, the child has the right to have an
attorney appointed to counsel with the child before or during any interviews
with peace officers or attorneys representing the state[.] 

 








Tex. Fam. Code Ann. ' 51.095(a)(1)(A)(iii) (Vernon Supp.
2002).  Specifically, R.G. objected to
the introduction of his oral, not written, statement because the words Aappointed to@ which were contained in the statute,
were not contained in Wallace=s form Warnings. 
Putting aside the fact that R.G.=s statement was an oral statement and
was therefore not covered by section 51.095(a)(1)(A)(iii), R.G.=s trial objection does not comport
with the issue he now raises on appeal. 
Because R.G. did not object at the time of trial to the presence of a
peace officer when R.G. was given the Warnings by Wallace, any error is
waived.  In re C.C., 13 S.W.3d at
859.  Point of Error One is therefore
overruled.

Deviations
from progressive sanctions guidelines

 R.G.=s second point of error concerns the
factual sufficiency of the evidence used to support the trial court=s decision to deviate from the
progressive sanctions guidelines.   This
Court has held that the juvenile court=s findings of fact are reviewable for
legal and factual sufficiency of the evidence to support them by the same
standards as are applied in reviewing the legal or factual sufficiency of the
evidence supporting a jury=s answers to a charge. 
In re M.A.C., 999 S.W.2d 442, 446 (Tex. App.--El Paso 1999, no
pet.) (citing In the Matter of J.P.O., 904 S.W.2d 695, 699‑700
(Tex. App.‑‑Corpus Christi 1995, writ denied)).  However, we will not disturb the juvenile
court=s disposition order in the absence of
an abuse of discretion.  In re M.A.C.,
999 S.W.2d at 446 (citing In the Matter of E.F., 535 S.W.2d 213, 215
(Tex. Civ. App.‑‑Corpus Christi 1976, no writ)).








Bearing these standards in mind, we
conduct our review via a two‑pronged analysis:  (1) Did the trial court have sufficient
information upon which to exercise its discretion; and (2) Did the trial court
err in its application of discretion?  In
re M.A.C., 999 S.W.2d at 446; Leibman v. Grand, 981 S.W.2d 426, 429
(Tex. App.‑‑El Paso 1998, no pet.); Lindsey v. Lindsey, 965
S.W.2d 589, 591 (Tex. App.‑‑El Paso 1998, no pet.).  With regard to the first question, the
traditional sufficiency of the evidence review articulated below comes into
play.  Id.  We then proceed to determine whether, based
on the elicited evidence, the trial court made a reasonable decision or whether
it is arbitrary and unreasonable.  Id.

The question before us then, is not
whether, in the opinion of the reviewing court, the facts present an
appropriate case for the trial court=s action, but whether the court acted
without reference to any guiding rules and principles.  In re M.A.C., 999 S.W.2d at 446; Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985), cert.
denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); Leibman,
981 S.W.2d at 430; Lindsey, 965 S.W.2d at 591.  Restated, the mere fact that a trial judge may
decide a matter within his discretionary authority in a different manner than
an appellate judge in a similar circumstance does not demonstrate that an abuse
of discretion has occurred.   Southwestern
Bell Telephone Company v. Johnson, 389 S.W.2d 645, 648 (Tex. 1965);  Leibman, 981 S.W.2d at 430; Lindsey,
965 S.W.2d at 592.

In reviewing R.G.=s factual sufficiency challenge, we
view all of the evidence but do not view it in the light most favorable to the
challenged findings.  In re M.A.C.,
999 S.W.2d at 446.  Only if the finding
is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust will we conclude that the evidence is factually insufficient.  Id.








An appropriate disposition of R.G.=s case required the juvenile court=s exercise of discretion to be guided
by the requirements of section 54.04 of the Family Code.  In re M.A.C., 999 S.W.2d at 446-47.  To commit a child to the Texas Youth
Commission, the court must additionally find and state in its disposition order
that placement outside of the child=s home is in the child=s best interest and that reasonable
efforts were made to prevent or eliminate the need for the child=s removal from the home.  Tex.
Fam. Code Ann. ' 54.04(i) (Vernon Supp. 2002).  R.G. challenges the factual sufficiency of
the evidence supporting each of the juvenile court=s findings.

The juvenile court=s first rationale for the TYC
commitment was that he was experiencing problems in his home environment and
community and that placement in an alternative situation was necessary for him
to continue his education.  There was
ample evidence that R.G. was experiencing such problems.  Leyva=s second supplemental report to R.G.=s social history was before the
juvenile court.  In it, Leyva describes
several incidents in which R.G. exhibited threatening behavior towards other
students and his teacher.  These problems
were serious enough that R.G. was required to finish out the school year in a
kindergarten classroom.  That R.G. was
having problems in his community is also demonstrated by the fact that the
felony allegations made against him were found to be true.  These burglary incidents involved his
neighbors.  Furthermore, at least one of
his neighbors testified that R.G. had been smoking marijuana in his
neighborhood.








The juvenile court=s second stated reason for the TYC
commitment was that probation at home was not feasible and did not serve R.G.=s best interest.  Leyva testified that the TYC commitment was
in R.G.=s best interest because he could be
supervised until age 21 and would be offered more services and supervision than
other placements such as Boot Camp. 
Leyva=s report also indicates that home
probation was not working and that his mother=s attempts to discipline him resulted
in R.G. leaving the house for long periods of time.  Furthermore, R.G. continued to engage in
serious acts of delinquency while on home probation.  Leyva and the probation department thus
concluded that TYC and its highly structured environment were therefore the
only alternative presently available to the court to help R.G.

The juvenile court=s third rationale for the TYC
commitment was that his parent had no control or influence over R.G. as
indicated by his past activities.  In
this regard, we emphasize that we can reverse the juvenile court=s decision only if the finding is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.  In re M.A.C., 999 S.W.2d
at 446.  The evidence in this record
indicates that R.G.=s mother was quickly losing control over her son.  Leyva found that she was unable to control
his association with other friends who were probationers, and that observation
was proven true at the contested case hearing. 
Stated another way, the overwhelming weight of the evidence did not
demonstrate that R.G.=s mother had been able to prevent  R.G. from engaging in delinquent and
felonious conduct.








The trial court=s final reason for the TYC commitment
was that R.G. had been unable to adjust his behavior in the home environment
and through the traditional juvenile justice system within the community and
therefore a structured environment was in his best interest.  The overwhelming weight of the evidence in
this record demonstrates that R.G.=s delinquent behavior was getting
worse despite previous methods of intervention. 
This finding is supported by the record.

We are unable to find any abuse of
discretion.  The juvenile court acted
within its discretion to deviate from the progressive guidelines.  R.G.=s second point of error is thus
overruled.

Conclusion

The adjudication and commitment order
of the juvenile court is therefore affirmed.

 

 

                                                                        


SUSAN
LARSEN, Justice

June 27, 2002

 

Before Panel No. 1

Larsen, McClure, and Chew,
JJ.

 

(Do Not Publish)