NO. 12-00-00289-CR



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS


 


LINDSAY FAISST,
§
 APPEAL FROM THE 7TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS







OPINION ON REMAND Appellant Lindsay Faisst was certified as an adult and was charged with the offense of
Intoxication Manslaughter. After certification and transfer to district court, Appellant entered a plea
of guilty and was sentenced to confinement for ten years, probated. Appellant appeals the
discretionary transfer from juvenile court. 

 In Faisst v. State, No. 12-00-00289-CR, 2001 Tex. App. LEXIS 8551, at *3 (Tex. App.-
Tyler, November 30, 2001), we held that, based upon Young v. State, 8 S.W.3d 656, 666-67 (Tex.
Crim. App. 2000), this court did not have jurisdiction over Appellant's appeal because she pleaded
guilty at the district court level. Disagreeing with our interpretation of Young, the court of criminal
appeals has remanded this case for further proceedings consistent with its opinion. See Faisst v.
State, 98 S.W.3d 226 (Tex. Crim. App. 2003). We affirm.


Background

 Appellant was driving a vehicle, with Ashleigh McCaa as her passenger, when the
Whitehouse police clocked her traveling above the speed limit. She attempted to flee when the
police began pursuit of her vehicle. As Appellant was negotiating a curve at a high rate of speed, 
estimated at 100 m.p.h., she lost control of her car and hit a large tree. She was thrown from the
vehicle and sustained minor injuries, but her passenger was decapitated and an arm was ripped off
when her side of the vehicle made contact with the tree. Because of the amount of force which had
been applied to McCaa's seatbelt, it finally gave way, and she was thrown from the car into a barbed
wire fence. At the scene, Appellant asked repeatedly, "Where am I?" and "Is my car o.k.?" Her
speech was slurred and hard to understand, although there was no evidence of head trauma. It was
later determined that Appellant was intoxicated at the time of the incident.

 Appellant was sixteen years old when the accident occurred. An original petition was filed
in juvenile court alleging that Appellant had engaged in delinquent conduct. The State then filed its
motion for discretionary transfer to district court. By the time of the hearing, Appellant had turned
seventeen. After hearing testimony, considering evidence and argument of counsel, the juvenile
court certified Appellant as an adult, and transferred this case to the district court.

 Appellant waived presentment of the indictment for Intoxication Manslaughter, waived her
right to trial by jury, and pleaded guilty without benefit of a plea recommendation. A pre-sentence
report was prepared, and after presentment of evidence and argument, Appellant was sentenced to
ten years of confinement in the Texas Department of Criminal Justice - Institutional Division. 
Appellant then filed a Motion for Probation after Execution of Sentence, which the trial court
granted. This appeal followed. 


Discretionary Transfer

Standard of Review

 In order to transfer a juvenile to adult court, the court must find that (1) there is probable
cause to believe that the juvenile committed the offense alleged in the petition, (1) and (2) because of
the seriousness of the offense alleged or the background of the child, the welfare of the community
requires criminal prosecution. Tex. Fam. Code Ann. art. 54.02(a)(3) (Vernon Supp. 1998). To
facilitate this decision, the Family Code sets out criteria for the court to consider:



 whether the alleged offense was against a person or property, with greater weight in favor of
transfer given to offenses against the person; 
 the sophistication and maturity of the child;
 the record and previous history of the child; and
 the prospects of adequate protection of the public and the likelihood of the rehabilitation of
the child by use of procedures, services, and facilities currently available to the juvenile
court.



Tex. Fam. Code Ann. art. 54.02(f) (Vernon Supp. 1998). While the juvenile court must consider
all of these factors before transferring the case to district court, it is not required to find that each
factor is established by the evidence. In re D.D., 938 S.W.2d 172, 176 (Tex. App.- Fort Worth
1996, no pet.). And the juvenile court is not required to give each factor equal weight so long as
each is considered. In re J.J., 916 S.W.2d 532, 535 (Tex. App.- Dallas 1995, no writ); In re
C.C.G., 805 S.W.2d 10, 15 (Tex. App.- Tyler 1991, writ denied). Further, a court does not abuse
its discretion by finding the community's welfare requires transfer due to the seriousness of the crime
alone, despite the child's background. D.D., 938 S.W.2d at 177; C.C.G., 805 S.W.2d at 15.

 At the conclusion of the transfer hearing, the juvenile court issued the following findings:


 The Court finds that the said act would be a felony under the laws of the State of Texas if
committed by an adult. 
 The Court finds that the alleged offense was against a person.
 The Court finds that the Child is of sufficient sophistication and maturity to be tried as an
adult. The Court specifically finds that the Child is of sufficient sophistication and maturity
to aid an attorney in her defense.
 The Court finds that because of the extreme and severe nature of the alleged offense, the
prospects of adequate protection for the public and likelihood of reasonable rehabilitation
of the Child by the use of procedures, services and facilities which are currently available to
the Juvenile Court are in doubt. 



 The standard of review for an appellate court in reviewing a juvenile court's decision to
certify a juvenile defendant as an adult is abuse of discretion. In the Matter of K.B.H., 913 S.W.2d
684, 687-88 (Tex. App.- Texarkana 1995, no writ). A court abuses its discretion when it acts in an
arbitrary or unreasonable manner. In the Matter of J.P.O., 904 S.W.2d 695, 702 (Tex. App.-
Corpus Christi 1995, writ denied). Relevant factors to be considered when determining if the court
abused its discretion include legal and factual sufficiency of the evidence. KBH, 913 S.W.2d at 688. 
The juvenile court's findings of fact are reviewable by the same standards as are applied in reviewing
the legal or factual sufficiency of the evidence supporting a jury's answers to a charge. J.P.O., 904
S.W.2d at 700. 

 When the legal sufficiency of the evidence supporting a certification and transfer order is
challenged, we view the evidence in the light most favorable to the court's findings and determine
whether there is any evidence to support such findings. J.J., 916 S.W.2d at 535. It is not within our
power to second guess the factfinder unless only one inference can be drawn from the evidence. Id. 
If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. 
Id. 

 By contrast, when the factual sufficiency of the evidence to support a certification and
transfer order is challenged, we consider all of the evidence to determine if the court's finding is so
against the great weight and preponderance of the evidence as to be manifestly unjust. C.M. v. State,
884 S.W.2d 562, 563 (Tex. App.- San Antonio 1994, no writ). Absent an abuse of discretion, we
will not disturb a juvenile court's findings. Id. 

 In her sole issue, Appellant agrees that the facts of this offense are tremendously serious. 
However, taken in conjunction with the testimony at trial, Appellant asserts that they do not show
that the welfare, safety and protection of the community require her adult criminal prosecution,
which is a challenge to the juvenile court's fourth finding. Therefore, Appellant contends, because
there is neither legally nor factually sufficient evidence to support the finding, the trial court abused
its discretion when it transferred the case to the district court. 

Legal Sufficiency

 During the discretionary transfer hearing, Joe Berg, a juvenile probation officer for Smith
County, testified for the State. He explained that in the juvenile justice system, the minimum
punishment for an offense is three months of intensive supervision, plus six months of probation. 
The maximum punishment is twelve months of intensive supervision, followed by twelve months
of probation. The juvenile court loses its jurisdiction, however, when the child turns eighteen,
whether he has completed his supervision and probation or not. Berg opined that the crime for
which Appellant was charged was of a most serious nature, and that if she were not certified an adult,
she should be assessed the maximum punishment. He explained, however, that Appellant was
already seventeen, and that the court would lose jurisdiction over her long before she had served her
sentence. Berg also testified that when a person who is under the influence of alcohol commits an
offense where death occurs, that person needs a minimum of fifteen to twenty months of supervision
to ensure that rehabilitation takes place. 

 Berg plainly stated that because of the serious nature of intoxication manslaughter, Appellant
requires longer supervision than the juvenile justice system can provide. We hold, therefore, that
this evidence is legally sufficient to support the juvenile court's finding that 

 

 because of the extreme and severe nature of the alleged offense, the prospects of adequate protection
for the public and likelihood of reasonable rehabilitation of the Child by the use of procedures,
services and facilities which are currently available to the Juvenile Court are in doubt. 


Factual Sufficiency

 In addition to the above-described testimony, Berg stated that Appellant had been issued a
ticket for the offense of Minor in Possession in June of 1998, one and a half years before the
accident. At that time, she was required to complete, and did complete, six hours of alcohol
education. He pointed out that the education obviously had no effect on Appellant's actions. Berg
further related Appellant's admission that she had been drinking for six months before the accident,
and had been intoxicated on at least six or seven of those occasions. Berg opined that this level of
drinking showed that Appellant had a significant problem with alcohol abuse. 

 In addition to Berg's testimony that Appellant should be transferred to district court because
the juvenile system did not have the resources to adequately supervise or rehabilitate Appellant, a
Social Evaluation and Investigative Report which was prepared by Smith County Juvenile Services
was also admitted into evidence. The Deputy Director and the investigating Juvenile Probation
Officer both recommended that Appellant be transferred to the district court of Smith County, Texas
for criminal prosecution, due to the fact that she had committed a felony offense. Attached to the
report was a Texas Department of Public Safety Traffic Law Enforcement Division Offense Report.
The investigating officer completed this report after speaking to witnesses and analyzing all physical
evidence. He concluded that 


 Lindsay Marie Faisst chose to drink alcoholic beverages, even though she was under the age of 21. 
She chose to drive after reaching a state of intoxication. She chose to accelerate her vehicle to an
unsafe speed to avoid being stopped by Whitehouse Police Department. Then she chose to continue
driving at the unsafe speed as she entered a curve, causing her vehicle to leave the roadway on the
North side of the road and strike the trees. Based upon the actions of Ms. Faisst prior to and during
this incident, it is certain that Ms. McCaa died as a direct result of Ms. Faisst's decision to drive while
intoxicated, to flee from the police and to exceed the critical curve speed on a narrow, winding, two
lane farm to market roadway.


The investigating officer further explained that Appellant had made very poor decisions which a
sober person would not normally have made. 

 James Brown, the owner of Trinity Counseling Associates of East Texas, testified on
Appellant's behalf. He stated that he had seen Appellant on two occasions. The first time he simply
evaluated her maturity level. During the second interview, he spoke with Appellant about the
accident. He opined that because of her remorse, he did not believe that there was a high probability
that an incident like the one in question would reoccur. Brown also stated that he was not aware that
Appellant had any prior juvenile referrals, any truancy problems or any other criminal violations. 
But he admitted that Appellant had not told him that she received an MIP prior to the incident. 
During the hearing, the following exchange occurred between Appellant's attorney and Brown:



 Do you see anything other than the results of what happened that night, Ms. Faisst, as any
indication that it was any different than any teenager experimenting with alcohol?



 If I see anything, it is vague. There may have been something growing in this pattern that
would be difficult to identify clinically and to spell out. And probably the thing that you
know is most consistent in this pattern is the deception of her parents about where she was
and what she was doing.



 Would you agree with me that it's not abnormal for teenagers to deceive their parents with
who they're with and where they have been?



 I agree that that's not an unusual pattern, but however when it begins to fall into something
that's a regular pattern, that might be an indication of a problem. That's what I mean by
something that's ill defined, perhaps.



Brown admitted that he had made no recommendation in his report about whether or not Appellant's
case should remain in the juvenile system. He also stated that he was aware that there had been a
change in the law from "best interest of the child" to determining an appropriate punishment for a
juvenile. 

 Tom Allen, a psychologist who also interviewed Appellant on two occasions, testified that
in regard to the question of whether or not Appellant would be a danger to the community, he saw
little to no risk assessment issues. He opined that there was a minimal risk of recidivism because
of her profound grief and remorse. He also stated that any concerns which society might have about
Appellant could be adequately addressed in an eleven-month period. Further, Allen testified that he
had found no indication of psychopathy, conduct disorder, attention deficit disorder, or any other
type of mental disease or defect. He also opined that an adolescent's judgment is not as defined or
mature as an adult's. Allen would not comment on whether or not eleven months of probation would
be adequate to punish Appellant for causing the death of another individual. He stated that "as far
as I'm concerned, that's up to the court not a mental health expert."

 Shirley Estes, a dance teacher in the Whitehouse Independent School District, testified that
when Appellant was in her class, she had been a good student, was respectful, had a sweet
disposition, and interacted well with other students. Additionally, she stated that Appellant was a
"normal teenager." Lee Yeager, also a teacher with WISD, agreed with Estes' evaluation of
Appellant. He further testified that after the accident, Appellant had a very difficult transition, that
she no longer interacted with other students, and that she was sometimes zombie-like. 


Conclusion


 After a thorough review of the record, we find not only legally sufficient, but also factually
sufficient evidence to support the juvenile court's fourth finding. The court's finding that because
of the severity of the offense, which requires a long period of supervision and probation, the juvenile
justice system cannot adequately protect the public or provide for the rehabilitation of Appellant, is
not so against the great weight and preponderance of the evidence as to be manifestly unjust.
Accordingly, we hold that the juvenile court did not abuse its discretion when it certified Appellant
as an adult and transferred her case to the district court. We overrule Appellant's sole issue and
affirm the judgment of the trial court.


 JAMES T. WORTHEN 

 Chief Justice



Opinion delivered April 23, 2003.

Panel consisted of Worthen, C.J. and Griffith, J.







(PUBLISH)


1. Appellant stipulated to her age and that there was probable cause to believe that she had committed
intoxicated manslaughter.