**In the Matter of D.W.L.**

**No. C14–91–00474–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

April 2, 1992.

Kent E. Ellis, Houston, for appellant.

Timothy G. Taft, Houston, for appellee.

Before JUNELL, ROBERTSON and DRAUGHN, JJ.

## OPINION

DRAUGHN, Judge.

Appellant, D.W.L., appeals the juvenile court's order waiving exclusive jurisdiction of the cause against him pursuant to TEX. FAM.CODE ANN. § 54.02(a). (Vernon Supp. 1992). The juvenile court transferred the cause to the criminal district court where appellant would be tried as an adult for the offense of capital murder. In two points of error, appellant contends the trial court erred in waiving its exclusive jurisdiction because the State failed to exercise due diligence in serving appellant's parents pursuant to TEX.FAM.CODE ANN. § 53.07(b) and the evidence was insufficient to support a finding of probable cause. We affirm.

In his first point of error, appellant complains that the trial court erred in waiving its exclusive jurisdiction and transferring him to adult criminal court because the State did not utilize due diligence in locating and serving his parents with citation, summons, and notice of the hearing. We disagree.

Section 53.07(b) of the Texas Family Code provides:

> The juvenile court has jurisdiction of the case if after *reasonable* effort a person other than the child cannot be found nor his post-office address ascertained, whether he is in or outside this state.

TEX.FAM.CODE ANN. § 53.07(b) (Vernon 1986) (emphasis added).

The evidence indicates the trial court held a hearing on March 19, 1991, to determine whether the State had exercised due

diligence in serving appellant's parents. Appellant's aunt, Janice Palermo, had refused to be appointed guardian ad litem for the hearing. Deputy Constable Paul Spiller testified he received the papers to be served on appellant's mother pertaining to the certification hearing on September 24, 1990, and September 28, 1990. Since the papers listed her address as Harris County Jail, he checked the Harris County records through the computer and discovered she had been released on September 14, 1990. Locating her last known address, 3821 Turnberry, he discovered she no longer lived there. He returned the unserved papers to the court and put them back in the files. He marked them "not in jail", "released September 14th", and "bad address, no longer lives at that address."

District Attorney Investigator, Jack Lisano, testified that he received papers to serve on the appellant's parents in late January, 1990. By checking through auto registration records, he found another home address listed for the mother at 3633 South Shaver, Pasadena. When he drove there, the apartment manager disclosed she had been evicted around December 15, 1990, but provided Lisano with her employment reference, Alibi Club. Lisano obtained the mother's picture from the Houston Police Department files, showed it to the Alibi Club owners, and was informed she no longer worked there. When he inspected the mother's food stamp application, Lisano uncovered another address, 4202 Clover, which he investigated and ascertained was also incorrect. After examining Houston Police Department reports, he located another address, Pease Street, that the mother had previously listed when she reported a fight at a Houston club, Sun Tropez. Lisano called the Sun Tropez manager who stated the mother never came back, but gave him two more clubs' telephone numbers where she had been employed as a dancer. Neither club managers knew where to find her. Rechecking the automobile license records, Lisano found a new address for the mother, but the property owners did not recognize her. Through the driver's license records, Lisano discovered an address for the appellant's father in Melbourne, Florida, and attempted to serve him by mailing a letter there. However, the address was incorrect and he could not find any current phone listing. Lisano also called the appellant's aunt once at her place of employment, but she no longer worked there.

Juvenile Parole Officer, Donna Luna, testified appellant was assigned to her caseload after he was paroled from Gulf Coast Trade Center and returned to his aunt's home on June 28, 1990. Appellant's aunt stated his mother was in jail and that she did not know his father's address.

Probation Officer, Robert Murray, testified he only had contact with appellant's aunt. When he sought to visit the mother in jail, he was notified she had been released. Although his aunt provided Murray with a new address for the mother, he failed to serve her because she was evicted before he could reach her. Appellant told Murray his mother sent him a Christmas card with a Tennessee postmark. Murray had no contact with the father since his whereabouts were unknown except for possible Florida residency.

Janice Palermo, appellant's aunt, testified she did not know either parents' addresses, and denied that anyone had contacted her about their whereabouts.

■ Appellant claims the State should have served his parents by registered or certified mail in accordance with section 53.07(a) of the Texas Family Code. However, this section is inapplicable because appellant disregarded the criteria that the address of the person to be served *be known or ascertained with reasonable diligence.* TEX.FAM.CODE ANN. § 53.07(a). Here, the trial court reset the hearing three times to allow ample time for the State to determine his parents' addresses. Further, the evidence reflects extensive efforts by various Texas agencies to discover his parents' locations. We believe the State expended more than the necessary "reasonable effort" in its futile attempts to find and serve appellant's parents. Moreover, the State served and secured his aunt's presence at the hearing. Whereas

his aunt refused to be guardian ad litem for the hearing, the court further protected appellant's interest by appointing an attorney to serve in this function. Therefore, we find the trial court did not err in waiving its exclusive jurisdiction of appellant's case even though neither of his parents were served with citation, summons, or notice of the certification hearing. We overrule appellant's first point of error.

In his second point of error, appellant argues the trial court erred in determining there was sufficient probable cause that he committed the alleged offense of capital murder by a preponderance of the evidence. Specifically, he complains that the State's evidence was primarily hearsay testimony by Carman while the other witnesses testified that Murphy admitted killing the decedent. This argument has no merit.

The record indicates appellant met Ryan Roberds (Roberds) and his mother, Shirley Roberds (decedent), in August, 1990, and stayed with them in their townhouse from approximately August 18 to August 24, 1990. Roberds never knew any of appellant's friends. While he was there, appellant observed Roberds sneaking in and out of the townhouse through his bedroom window. Appellant left and moved in with his girlfriend, Beverly. Shortly afterwards, Roberds proceeded to move in with a friend, B.J. McDaniel. However, Roberds left most of his clothes behind, including an unusual suit that the decedent had given him for his recent birthday. None of appellant's clothes remained at the decedent's townhouse after Beverly picked up his pair of pants.

On August 27, 1990, John Carman testified he was at the Galleria with a group of people when appellant, "Bubba" Murphy, Jimmy Smith, and Tolee Nguyen left at approximately 4:00 p.m. They returned around two hours later, acted nervous, and said appellant had just shot someone. Carman, appellant, Murphy, Smith, Nguyen, and Stacey Migliavacca then left town for three days to stay at Migliavacca's lake house in Sargent, Texas. Appellant dyed his hair black to disguise his appearance.

The group then drove back to Houston, dropped off Carman and Smith, and proceeded to Galveston to take Murphy home.

Sergeant Wayman Allen, Houston Police Department Homicide Division, testified he was assigned to investigate Shirley Roberds' (the decedent's) death with his partner, Sergeant Moore. He stated there was a single gunshot wound on the decedent's upper left forehead and she still was wearing her jewelry. An initial examination of the immaculate townhouse indicated no forced entry and no missing property. The back door was unlocked and a window was open on the second floor. The policemen found it unusual that several T-shirts were rolled up and laying outside a dresser in an upstairs bedroom considering the neat appearance of the rest of the townhouse. A spent nine millimeter casing was recovered from the living room floor, but no weapon was discovered. After Roberds was notified, he entered the townhouse and reported his clothes were missing, including his new suit. Later, the police played the decedent's answering machine tape and discovered two messages on it for appellant.

On August 31, 1990, Galveston police received a report that two males and a female were waving a gun and driving around in a stolen Toyota car. When Galveston Officer Galvan attempted to pull the car over, the driver, appellant, increased his speed. During the high speed chase, Galveston Trooper Reddick observed one of the car occupants throwing a gun out of the Toyota's passenger side window. Another deputy constable fired a shotgun at the car when appellant drove it directly towards him and other officers. Appellant was wounded in the nose. On September 4, 1990, Houston Sergeant Allen traveled to Galveston to interview Nguyen and Migliavacca and to recover the pistol and clothing articles with possible blood stains. One item included a tuxedo jacket that Roberds later identified as part of his new birthday suit. After Houston Police Firearms Examiner, Ray Klein, compared the bullet recovered from decedent's body, the nine millimeter shell casing found near her body, and the gun appellant threw out of the

Toyota, he concluded the nine millimeter gun was the murder weapon. Sergeant Allen then took custody of the appellant in Galveston.

At appellant's certification hearing, several witnesses testified that Murphy shot the decedent. Delores Lynn Porter, Smith's former girlfriend, testified that he and Carman told her Murphy had shot the decedent. Carman also threatened to shoot her if she didn't keep her mouth shut. Melissa Rhodes testified she had been at the Galleria the day of the murder and Murphy talked about doing "an aggravated" on a house and then shooting a lady. Nguyen testified Murphy was carrying a nine millimeter gun, but asserted his Fifth Amendment privilege when questioned about the circumstances surrounding the decedent's death.

Carman, however, testified that appellant told him decedent surprised them during the robbery and he shot her because she recognized him. During his stay at Migliavacca's lake house, appellant again told Carman that he shot the decedent, "her brains came out," and she fell as if in slow motion. Appellant said that he and Murphy were in the house and Nguyen and Smith were in the car when the decedent returned home, called his name, and he shot her. Carman also testified that appellant had a black nine millimeter gun under his shirt while they drove back to Houston.

■ Section 54.02(a) of the Texas Family Code provides as follows:

(a) The juvenile court may waive its exclusive original jurisdiction and transfer a child to the appropriate district court or criminal district court for criminal proceedings if:

(1) the child is alleged to have violated a penal law of the grade of felony;

(2) the child was 15 years of age or older at the time he is alleged to have committed the offense and no adjudication hearing has been conducted concerning that offense; and

(3) after full investigation and hearing the juvenile court determines that there is *probable cause* to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense or the background of the child the welfare of the community requires criminal proceedings.

TEX.FAM.CODE ANN. § 54.02(a) (Vernon Supp.1992) (emphasis added). Probable cause is defined as sufficient facts and circumstances to warrant a prudent man to believe that the suspect had committed or was committing an offense. *Gerstein v. Pugh,* 420 U.S. 103, 112, 95 S.Ct. 854, 861, 43 L.Ed.2d 54 (1975). Probable cause for an arrest applies this same standard. *See Smith v. State,* 739 S.W.2d 848, 853 (Tex. Crim.App.1987). The Supreme Court states:

Probable cause traditionally has been decided by a magistrate in a nonadversary proceeding on *hearsay* and written testimony ... This use of an informal procedure is justified not only by the lesser consequences of a probable cause determination, but also by the nature of the determination itself. It does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a *preponderance standard* demands ...

*Gerstein,* 420 U.S. at 120–121, 95 S.Ct. at 866–67 (emphasis added). Ordinarily, a preliminary hearing is a much less searching exploration into a case's merits than a trial because its function is a more limited one to determine whether probable cause exists to hold the accused for trial. *Barber v. Page,* 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968); *See Russell v. State,* 604 S.W.2d 914, 921 (Tex.Crim.App. 1980).

■ Appellant is misguided in asserting that the trial court need apply the higher standard of proof "by a preponderance of the evidence" in a certification hearing. Section 54.02(a)(3) of the Texas Family Code indicates that the juvenile court need only determine there is "probable cause" that the juvenile committed an offense. Further, the trial court can determine probable cause in a nonadversary preliminary hearing through the use of hearsay besides written and oral testimony. The judge does not determine appellant's

innocence or guilt at the hearing, but merely evaluates whether he should be tried as a juvenile or adult in subsequent proceedings.

 The trial court is the sole factfinder in a pretrial hearing and may choose to believe or disbelieve any or all of the witnesses' testimony. *Johnson v. State*, 803 S.W.2d 272, 287 (Tex.Crim.App.1990). The hearing evidence reveals that the witness Porter was on probation for auto theft and had recently provided a gun for Migliavacca. Rhodes, who implicated Murphy as the killer, had previously dated appellant. During cross-examination, Nguyen admitted telling Houston officers that appellant shot someone during the robbery and that Murphy only went into the house to help appellant retrieve his clothing. Murphy claimed his Fifth Amendment privilege in response to all the question he was asked. Hence, the trial court, as the sole factfinder, was in the unique position to observe the demeanor and evaluate the credibility of the witnesses, and select which, if any, to believe. The trial court chose to believe Carman's version of the facts and circumstances. Absent a showing of an abuse of discretion, the trial court's findings will not be disturbed. *Freeman v. State*, 723 S.W.2d 727, 733 (Tex.Crim.App.1986). Appellant asks us to weigh the conflicting evidence and determine which witnesses are credible. This we will not do from an appellate perch after the fact. We find the trial court did not abuse its discretion in ruling there was sufficient probable cause that appellant committed an offense. We overrule appellant's second point of error.

We affirm the trial court's judgment.