# NO. 12-07-00190-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *SHAINA SEPULVADO,*<br>*APPELLANT* | § | *APPEAL FROM THE 420TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *NACOGDOCHES COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Shaina Sepulvado appeals the juvenile court's waiver of its exclusive original jurisdiction and transfer of her to district court to be tried for capital murder as an adult. In one issue, Appellant argues that the juvenile court's waiver of its jurisdiction and subsequent transfer amounted to an abuse of discretion. We affirm.

### BACKGROUND

James Kelly was murdered in his home while he slept in October 2005. The record reflects that Appellant's mother, Marcia Kelly, promised money to whoever would kill Kelly, her husband. The record reflects that Appellant, Kelly's stepdaughter, sought to solicit persons to carry out the murder and was present when Kelly was murdered. Appellant was taken into custody in connection with Kelly's death, detained as a juvenile,[1] and charged with capital murder. Thereafter, the State filed a motion for discretionary transfer to adult criminal court. On February 17, 2006, the juvenile court held a hearing on the State's motion.

---

[1] Appellant was sixteen years old at the time of her arrest.

Dr. Donald Winsted, III, a licensed psychologist, testified concerning his assessment of Appellant. Winsted testified that Appellant had an IQ composite of 73, which he categorized as "borderline intelligence." According to Winsted, a person with an IQ in this range is reasonably capable of negotiating day to day activities, can learn to drive a car, can have a job, and can undertake various normal adapted living skills. Winsted further testified that a person with such an IQ tends to engage in a "concrete type of thinking" and has difficulty seeing gray areas and dealing with complex information. Winsted described Appellant as not having a high level of maturity. Winstead elaborated that, from a neurological developmental standpoint, Appellant could be likened to a person of between ten years and ten years, eleven months in age. Winsted described this assessment as a measure of how well developed Appellant's brain is and summarized his findings, stating that Appellant had a significant lack of sophistication. Winsted stated that someone with a profile like Appellant's would tend to be more influenced by that person's mother's request that she kill someone and would have more difficulty deciding that such a thing was not in her best interest.

Winsted also testified concerning persons with an "underdeveloped social conscience." Winsted described this behavioral issue as involving a person's inability to understand how her actions might impact another person. Winsted stated that the most dangerous type of person is one who has an underdeveloped social conscience because such a person knows, somewhat, the difference between right and wrong, but does not necessarily empathize with or recognize how her actions affect other people. In other words, the person has an underdeveloped social conscience "and nothing's bothering them." Yet, according to Winsted, the positive factor with regard to Appellant is that she admits she has some emotional difficulties. Winsted elaborated, stating that, even though Appellant had antisocial tendencies, she showed that she was not "simply comfortable with what's happening in her life." Winsted described Appellant's level of understanding with regard to Kelly's murder as "limited," but declined to conclude that she did not understand what she was doing. Winsted further declined to equate Appellant's delayed level of maturity with a lack of understanding of her actions. Winsted acknowledged that Appellant had difficulty in controlling her hostile impulses. Further, Winsted agreed that a person who has difficulty in controlling her hostile impulses to the extent that she participates in a murder presents a danger to society as a whole. Winsted categorized his prognosis of Appellant as "guarded," which he explained meant that there

2

was limited hope that Appellant would be able to overcome her difficulties, "whether they be temperament or genetic or whether they be environmental."

At the conclusion of the hearing, the juvenile court made the following findings:

> [T]he Court has considered the factors listed in Texas Family Code, Section 54.02(f) and related those factors to the evidence produced in today's hearing.
>
> The Court finds that the alleged offense was against a person. ... [T]he Court finds that all parties were properly served and that all notice was given within the statutory time lines; and that in considering the sophistication and the maturity of the child, the Court finds that the respondent is sufficiently sophisticated and mature to be tried as an adult; and further finds that the child is sufficiently mature to aid her attorney in her defense.
>
> ...[T]he court has considered the record and previous history of the child and the prospects of adequate protection of the public and the likelihood of rehabilitation of the child by use of procedures [and] services of the facility currently available to the juvenile court, and the Court finds that the procedures [and] services of the facility [that] is currently available to the juvenile court will not likely rehabilitate the respondent and that the public cannot be adequately protected; and that after a full investigation hearing of the child, her circumstances, and the circumstances of the offense was conducted by the Court, the Court finds that there is probable cause to believe the child committed the offense as alleged; and that in considering the seriousness of the offense and the background of the child, finds that because of the seriousness of the [offense] and the background of the child, the welfare of the community requires the criminal proceedings to proceed in criminal court concerning the affirmation of felony offenses and all criminal conduct occurring in the said criminal episodes.
>
> Therefore, the 420th Judicial District Court, sitting as juvenile court, is waived in this – the jurisdiction is waived by that Court and the cause will be transferred for appropriate criminal district court proceedings to the 420th Judicial District Court, those proceedings to be had with the respondent as an adult in accordance with the Texas Code of Criminal Procedure.

Following her transfer to district court, Appellant was tried and convicted of capital murder and sentenced to imprisonment for life without the possibility of parole. This appeal followed.[2]

## WAIVER OF JURISDICTION AND TRANSFER TO DISTRICT COURT

In her sole issue, Appellant argues that the juvenile court abused its discretion by waiving its jurisdiction and transferring her to district court so that she could be tried for capital murder as an adult. The juvenile court may waive its exclusive original jurisdiction and transfer a child to the appropriate district court or criminal district court for criminal proceedings. *See* TEX. FAM. CODE

---

[2] *See* TEX. FAM. CODE ANN. § 56.01 (Vernon 2002).

ANN. § 54.02(a) (Vernon 2002). In a juvenile court transfer proceeding, the burden is upon the prosecuting attorney to present evidence that will form the basis of the court's decision. *See **In re E.D.N.***, 635 S.W.2d 798, 800 (Tex. App.–Corpus Christi 1982, no pet.). The purpose of the proceeding is to determine whether it is in the best interest of the child and of society to retain jurisdiction in the juvenile court or to transfer the child to the district court for adult criminal proceedings. *Id.* To facilitate this decision, the legislature has provided criteria for the court to consider. *See* TEX. FAM. CODE ANN. § 54.02(f) (Vernon 2002). Section 54.02(f) sets forth that in making the determination to waive its original jurisdiction and transfer, the court shall consider, among other matters, the following:

(1)      whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2)      the sophistication and maturity of the child;

(3)      the record and previous history of the child; and

(4)      the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

*Id.* While the court must consider all of these factors, it need not find that they have all been established. ***In re E.D.N.***, 635 S.W.2d at 800. In order to transfer the case, the juvenile court must conclude that the seriousness of the offense or the background of the child and welfare of the community requires criminal proceedings. *See* TEX. FAM. CODE ANN. § 54.02(a)(3) (Vernon 2002); ***In re E.D.N.***, 635 S.W.2d at 800 (citing ***J.D.P. v. State***, 609 S.W.2d 868, 870 (Tex. Civ. App.–Texarkana 1980, no writ)). If the evidence establishes enough of the factors in section 54.02(f) to convince the juvenile court that a transfer is in the best interest of the child and community, we will not disturb that order. *See **In re E.D.N.***, 635 S.W.2d at 800.

The juvenile court is the sole fact finder in a pretrial hearing and may choose to believe or disbelieve any or all of the witnesses' testimony. *See **In re D.W.L.***, 828 S.W.2d 520, 525 (Tex. App.–Houston [14th Dist.] 1992, no pet.). Absent a showing of an abuse of discretion, we will not disturb the juvenile court's findings. *Id.* The juvenile court abuses its discretion when it acts

4

without reference to any guiding rules and principles, or acts in a manner that is arbitrary or capricious. *Cameron v. State*, 988 S.W.2d 835, 844 (Tex. App–San Antonio 1999, pet. ref'd). The fact that the appellate court may have reached a different conclusion than the trial court did within its discretionary authority does not demonstrate that an abuse of discretion has occurred. *Id.*

Here, we initially note that Appellant was charged with capital murder, an offense against a person. We further note that Appellant has not argued in her brief concerning the factor related to her record or previous history.

## Sophistication and Maturity

Appellant argues at length that the record does not support the juvenile court's finding that Appellant was sufficiently sophisticated and mature to be tried as an adult. The purpose of an inquiry into the mental ability and maturity of the juvenile is to determine whether she appreciates the nature and effect of her voluntary actions and whether they were right or wrong. *See L.W.F. v. State*, 559 S.W.2d 428, 431 (Tex. Civ. App.–Fort Worth 1977, writ ref'd n.r.e.). We acknowledge, as does Appellant in her brief, that Winsted testified Appellant had "lots of issues and problems." However, Winsted was clear in his testimony that though Appellant lacked sophistication, she admitted to having emotional difficulties. Winsted elaborated, stating that, even though Appellant had antisocial tendencies, she showed that she was not "simply comfortable with what's happening in her life." Winsted described Appellant's level of understanding with regard to Kelly's murder as "limited," but declined to conclude that she did not understand what she was doing. Winsted further declined to equate Appellant's delayed level of maturity with a lack of understanding of her actions. Given Winsted's testimony, we conclude that the juvenile court could reasonably have found that Appellant appreciated the nature and effect of her voluntary actions and whether such actions were right or wrong.

## The Prospects of Adequate Protection of the Public

The entirety of Appellant's argument concerning this factor is as follows: "Had the juvenile court retained jurisdiction, Shaina would have been eligible for commitment to the Texas Youth Commission [f]or proceedings under Determinate Sentencing which would have allowed the Juvenile Court to reassess her suitability for transfer at a later date." Appellant makes no further contentions as to how Appellant's commitment to the Texas Youth Commission for proceedings

under determinate sentencing or the juvenile's court's opportunity to reassess her suitability for transfer at a later date adequately protects the public. Furthermore, Appellant has cited to no authority nor has she made any citation to the record in her briefing on this factor. *See* TEX. R. APP. P. 38.1(h). Absent cogent argument on Appellant's part, we decline to conclude that the juvenile court abused its discretion with regard to this factor.

**Likelihood of Rehabilitation of the Child**

Appellant reasserts the same argument she made concerning the "prospects of adequate protection of the public." Additionally, Appellant argues that Winsted repeatedly asserted that Appellant admitted she had problems and met the criteria for inpatient mental health and counseling services routinely available to juvenile probation departments. However, Appellant fails to address Winsted's "guarded" prognosis of Appellant. In the hearing before the juvenile court, Winsted confirmed that by his prognosis of "guarded," he was conveying that "there is a limited hope that [Appellant is] going to be able to overcome these difficulties, whether they be temperament or genetic or whether they be environmental[.]" Moreover, Winsted acknowledged that Appellant had difficulty in controlling her hostile impulses and agreed that a person who has difficulty in controlling her hostile impulses to the extent that she participates in a murder presents a danger to society as a whole. Thus, we conclude that the juvenile court could have reasonably found that it was unlikely that Appellant could be rehabilitated by use of procedures, services, and facilities then available to the juvenile court.

**Summary**

We have reviewed the entirety of the record in light of the criteria set forth in section 54.02(f). Having done so, we do not conclude that the juvenile court acted without reference to any guiding rules and principles, or acted in a manner that was arbitrary or capricious. As such, we hold that the juvenile court did not abuse its discretion in waiving its exclusive jurisdiction and transferring Appellant to district court so that she could be tried for capital murder as an adult. Appellant's sole issue is overruled.

## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the juvenile court's order waiving its

jurisdiction over Appellant and transferring her to district court.


   BRIAN HOYLE  
Justice


Opinion delivered December 23, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*


(DO NOT PUBLISH)


7