

# NUMBER 13-25-00385-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE MATTER OF J.P.D.D.

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 5 OF NUECES COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Cron and Fonseca**
**Memorandum Opinion by Chief Justice Tijerina**

Appellant J.P.D.D.[1] was charged with delinquent conduct as a juvenile. In this accelerated appeal, by his sole issue, appellant argues that the evidence is insufficient to support a waiver of jurisdiction and that the juvenile court abused its discretion by waiving jurisdiction and transferring the case to district court. We affirm.

---

[1] *See* TEX. FAM. CODE ANN. § 56.01(j) (setting forth that "neither the child nor his family shall be identified in an appellate opinion rendered in an appeal or habeas corpus proceedings related to juvenile court proceedings under this title" and that the appellate opinion shall identify "the child by his initials only").

# I.  BACKGROUND

On April 4, 2023, the State filed its petition for adjudication alleging that on February 22, 2023, appellant, then sixteen, engaged in delinquent conduct by murdering Erasmo Avila, a first-degree felony; illegally carrying a firearm, a Class A misdemeanor; and evading arrest, a Class A misdemeanor. *See* TEX. PENAL CODE §§ 19.02(c), 38.04(b), 46.02.

On April 6, 2023, the State filed a petition for discretionary transfer requesting that the juvenile court waive its jurisdiction and transfer proceedings to district court. *See* TEX. FAM. CODE § 54.02. On May 15, 2023, appellant filed a motion for continuance, which the juvenile court granted. Thereafter, the trial court granted agreed motions for continuances on June 6, 2023, July 20, 2023, August 29, 2023, November 30, 2024, and January 30, 2025.

On May 8, 2024, the State filed a motion for continuance based on "pending evidence and discovery not yet provided" by the police department, which the juvenile court granted, and the trial was reset to July 25, 2024. On June 6, 2024, a grand jury found probable cause that appellant engaged in delinquent conduct by committing the offense of murder. *See id.* § 19.02(b). On July 16, 2024, appellant requested the appointment of a second attorney to represent him.

On July 23, 2024, the State filed another motion for continuance based on "medical leave of its chief [w]itness" and the fact that certain "forensic reports" "were promised to be ready in early July but have not been received."[2] On July 24, 2024, one day before

---

[2] The trial court's ruling does not appear in the record.

appellant's trial setting, the trial court granted appellant's request for the appointment of co-counsel.

On September 12, 2024, the State amended its petition for adjudication by also alleging that appellant, now seventeen, also committed aggravated assault with a deadly weapon, a second-degree felony, against two other individuals. *See id.* § 22.02(a)(2). The trial court reset the jury trial for October 21, 2024 "by agreement between [c]ounsel."

On October 16, 2024, the State requested another continuance. In the motion, the State clarified that "[o]nly recently ha[d] it become clear that there will be no deal reached on this case." The State also added that it was exercising its right to ask the grand jury "to approve the petition" so that the State could "seek a determinate sentence on all felony charges pending against" appellant. The State requested an additional sixty days to prepare for trial, and the appellant agreed to the continuance. The next day, the grand jury approved the State's petition.

Appellant reached the age of eighteen on November 21, 2024. On March 7, 2025, the State filed its "Emergency Petition for Discretionary Transfer to Adult Criminal Court," requesting that the trial court certify appellant as an adult based on the argument that it was not practicable for the State to proceed in the trial court before appellant's eighteenth birthday. *See* TEX. FAM. CODE § 54.02(j).

On May 22, 2025, the trial court held an evidentiary transfer hearing on the State's motion. The State argued that the majority of the eighteen-month delay in this case was due to lacking "necessary forensic and DNA evidence to go forward with trial."

Detective Mary Peña testified that in June 2024, she was out for a medical procedure for at least five weeks. According to Peña, while she was out, she was still waiting for lab reports from the Texas Department of Public Safety (DPS) Forensic IT department to be completed. Peña stated she finally received the lab reports on August 23, 2024. Peña explained that the DNA results were necessary to know the extent of appellant's involvement in the crime.

A State prosecutor testified that he took charge of the case in June 2023. In his efforts to resolve the case, the State engaged in plea negotiations, and the case was set for a plea hearing in September 2023. However, a plea deal was not reached. The prosecutor stated that, although the State had evidence to proceed against appellant on the law of the parties by September 2023, the State was not able to determine who fired the fatal shot.

Prior to August 2024, the State was waiting on forensic reports, such as DNA analyses from DPS on firearms and shell casings recovered from the crime scene. The prosecutor stated that there was nothing he could have done to obtain the forensics sooner because he "worked pretty hard to try to get them" to no avail. According to the prosecutor, he got the District Attorney "involved because [he] thought he had more . . . pull with the police." The prosecutor claimed that, prior to August 2024, the State did not have "enough [evidence] to determine which person actually fired the shots and that was essential" to the State's case. It was not until August 2024 that the State received the pending DNA analyses and shell casings, allegedly confirming appellant fired the fatal shot. By that time, he was no longer the prosecutor in the case.

4

According to the prosecutor, although the case was set for trial one month before appellant's eighteenth birthday, the State "needed some more time to get prepared," and appellant "agreed to the motion [for continuance] and a 60-day continuance." The State asked, "And, so, the 60-day continuance, which would have put it beyond his 18th birthday, was agreed to by both sides?" The prosecutor responded, "Yes." When defense counsel asked if it was "impossible to proceed before [appellant's] 18th birthday," the prosecutor responded, "It was not practicable." According to the State, "It was not . . . practicable for [it], in that short period of time, to do everything it needed to do to take him to trial and to garner [its] evidence and to present it to get him adjudicated and then to properly dispose of it."

Following the hearing, the trial court requested additional briefing from both sides. The trial court signed an order on August 13, 2025, waiving jurisdiction and transferring the case to the district court. The trial court found by a preponderance of the evidence that, for reasons beyond the control of the State, it was not practicable to proceed before appellant's eighteenth birthday. *See id.* § 54.02(j)(4)(A). This accelerated interlocutory appeal followed. *See id.* § 56.01(c)(1)(a); TEX. R. APP. P. 28.1(a).

## II.    WAIVER OF JURISDICTION

Juvenile courts have exclusive original jurisdiction over cases involving delinquent conduct by children. *See* TEX. FAM. CODE §§ 51.02.(2), 51.03, 51.04(a). Under certain conditions, a juvenile court may waive its exclusive original jurisdiction and transfer the proceeding to a district court for criminal prosecution. *See id.* § 54.02(a), (j). Transferring a child from juvenile court to criminal court for prosecution as an adult should be regarded

5

as the exception because children should be protected and rehabilitated rather than subjected to the harshness of the criminal system. *See Ex parte Thomas*, 623 S.W.3d 370, 376 (Tex. Crim. App. 2021).

After an accused person has turned eighteen, as is the case here, the authority of the juvenile court is generally limited to doing one of two things: it can waive its exclusive original jurisdiction and transfer the person to the appropriate district court in accordance with the requirements of Texas Family Code § 54.02(j), or it can dismiss the case*. Moore v. State*, 532 S.W.3d 400, 404 (Tex. Crim. App. 2017); *see In re A.M.*, 577 S.W.3d 653, 658 (Tex. App.—Houston [1st Dist.] 2019, pet. denied). Section 54.02(j) provides as follows:

> The juvenile court may waive its exclusive original jurisdiction and transfer a person to the appropriate district court or criminal district court for criminal proceedings if:
>
> (1)    the person is 18 years of age or older;
>
> (2)    the person was:
>
>     (A)    10 years of age or older and under 17 years of age at the time the person is alleged to have committed a capital felony or an offense under Section 19.02, Penal Code; [or]
>
> . . . .
>
>     (C)    15 years of age or older and under 17 years of age at the time the person is alleged to have committed a felony of the second or third degree or a state jail felony;
>
> (3)    no adjudication concerning the alleged offense has been made or no adjudication hearing concerning the offense has been conducted;
>
> (4)    the juvenile court finds from a preponderance of the evidence that:
>
>     (A)    for a reason beyond the control of the state it was not practicable to proceed in juvenile court before the 18th

birthday of the person; or

(B)    after due diligence of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person because:

    (i)    the state did not have probable cause to proceed in juvenile court and new evidence has been found since the 18th birthday of the person;

    (ii)    the person could not be found; or

    (iii)    a previous transfer order was reversed by an appellate court or set aside by a district court; and

(5)    the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged.

TEX. FAM. CODE § 54.02(j). All five parts of § 54.02(j) must be met before a juvenile court can waive its exclusive original jurisdiction and transfer a person to criminal district court under that provision. *See In re N.J.A.*, 997 S.W.2d 554, 556–57 (Tex. 1999); *Moore*, 532 S.W.3d at 405.

### III.    STANDARD OF REVIEW

An appellate court uses a two-part analysis to review a juvenile court's decision to waive its exclusive original jurisdiction and transfer a case to a criminal district court. *See In re A.M.*, 577 S.W.3d at 659. First, the appellate court must review the juvenile court's findings using the traditional evidentiary sufficiency standards. *Id.* at 658. "Under a legal-sufficiency challenge, we credit evidence favorable to the challenged finding and disregard contrary evidence unless a reasonable factfinder could not reject the evidence." *Id.* at 659. The evidence is legally sufficient if there is more than a scintilla of evidence to

7

support the findings. *Id.* When conducting a factual-sufficiency review, we consider all the evidence presented to determine if the juvenile court's findings conflict with the great weight and preponderance of the evidence so as to be clearly wrong or unjust. *Id.*

If the juvenile court's findings are supported by legally and factually sufficient evidence, then we review the juvenile court's ultimate waiver decision for an abuse of discretion. *Id.* A juvenile court abuses its discretion when its transfer decision is essentially arbitrary, given the evidence upon which it was based. *Id.* The juvenile court is the sole factfinder in a transfer hearing and may choose to believe or disbelieve any of the witnesses' testimony. *See Grant v. State*, 313 S.W.3d 443, 444–45 (Tex. App.—Waco 2010, no pet.) (citing *In re D.W.L.*, 828 S.W.2d 520, 525 (Tex. App.—Houston [14th Dist.] 1992, no writ)).

## IV. ANALYSIS

Appellant argues the trial court abused its discretion because "it was practicable for the State to proceed because the reasons for delay were not beyond the State's control."[3]

## A. Applicable Law

The Texas Supreme Court defined "practicable" in this provision as meaning "reasonably capable of being accomplished; feasible in a particular situation." *In re J.J.T.*, 711 S.W.3d 687, 697 (Tex. 2025). "[A] juvenile court, in the exercise of its discretion, may

---

[3] Appellant also argues the State did not exert "due diligence" under § 54.02(j)(4)(B). However, the parties did not argue § 54.02(j)(4)(B) in the trial court, and the trial court expressly waived its jurisdiction under § 54.02(j)(4)(A). Therefore, we confine our analysis to this element. *See* TEX. FAM. CODE § 54.02(j)(4)(A), (B); *see also In re C.C.C.*, 2022 WL 710143, at *9 ("[T]his case proceeded exclusively under § 54.02(j)(4)(A), which does not require a showing of due diligence.").

8

credit a valid reason or reasons 'beyond the control of the state' making it infeasible for the State to proceed before the juvenile turned eighteen." *Id.* The supreme court explained that whether specific reasons for delay are "beyond the control of the state" is "highly fact-specific," and "such fact-intensive determinations rest with the juvenile court." *Id.* "Reasons for delay beyond the state's control may overcome delays attributable to the state." *Id.* We must defer to the findings of the juvenile court because, as the factfinder, it "determines the credibility of the witnesses and the weight to accord their testimony." *Id.* at 698. Furthermore, the supreme court explained that the timing of the "crime must be considered against the time remaining until the juvenile's eighteenth birthday." *Id.* at 697.

**B.    *In Re N.J.T.***

### 1.    Time Span of the Case

In *In re N.J.T.*, the appellant was arrested on charges of aggravated sexual assault. No. 13-21-00089-CR, 2021 WL 4202165, at *1 (Tex. App.—Corpus Christi–Edinburg Sept. 16, 2021, no pet.). N.J.T was approximately sixteen years and four months old. *Id.* After N.J.T. turned eighteen, the juvenile court held a discretionary transfer hearing wherein it stated that its ruling to waive jurisdiction and transfer to adult criminal court was based on the pandemic and that defense counsel "filed all these motions and it delayed the case and she wanted all these hearings and all that . . . further delayed the case." *Id.* In its signed order, the juvenile court found in relevant part, that "by a preponderance of evidence that for a reason beyond the control of the state, that it was not practicable to proceed in juvenile court before [N.J.T.'s] 18th birthday"; there were "several resets due to [N.J.T.]'s requests for an investigator, [N.J.T.'s] request for deposition and [N.J.T.'s

9

failure to appear on 5/29/19"; there were "numerous resets outside of the state[']s control due to the Covid pandemic"; and that "the State did not unduly delay the proceedings in the matter." *Id.* at *3.

On appeal, this Court found the "evidence offered by the State" to be "more than a scintilla to support the juvenile court's finding that, for a reason beyond the control of the State, it was not practicable to proceed in the juvenile court" before appellant's eighteenth birthday. *Id.* at *7. N.J.T. argued that the state failed to meet its burden because: (1) "the time span of the case"; (2) the state "proceeded with a different certification hearing"; (3) the state "had all investigatory evidence and reports needed to proceed with the discretionary transfer hearing"; and (4) the state "requested several resets." *Id.* at *5. We rejected all N.J.T.'s arguments.

We stated that although "the time between when the State filed its first petition and the final hearing was over one and a half years," there was "evidence in the record that [the juvenile's] defense counsel . . . *attributed to the delay in the case, as she filed a motion for continuance* requesting more time to prepare and a motion for authorization to secure an investigator approximately eight months after the State's petition was filed."[4] *Id.* at *5 (emphasis added). We further noted that appellant's "defense counsel *filed continuous motions* for discovery and inspection," *id.*, and we relied on *J.C.W.G.* acknowledging that "the State has no duty to prevent a defendant from causing delay." *See In re J.C.W.G.*, 613 S.W.3d 560, 567 (Tex. App.—San Antonio 2020, no pet.). We

---

[4] We noted that defense counsel contributed to the delay "prior to Covid-19." *In re N.J.T.*, No. 13-21-00089-CR, 2021 WL 4202165, at *5 (Tex. App.—Corpus Christi–Edinburg Sept. 16, 2021, no pet.).

10

attributed further delays to the appellant when he "failed to appear" resulting in a reset and when his "trial counsel was unavailable . . . resulting in another reset." *In re N.J.T.*, 2021 WL 4202165, at *5. Thus, we rejected "N.J.T.'s time span argument as reasons that were within the control of the State." *Id.*

### 2.    Investigation and Reports

N.J.T. argued that the juvenile court had "all investigatory evidence" in the alleged delinquent conduct, had all the evidence and witnesses to proceed with an adjudication hearing prior to N.J.T.'s eighteenth birthday, and had "all the necessary reports to request a setting and proceed with the discretionary transferring hearing." *Id.* at *6. We rejected those arguments stating that although the juvenile court found that it had all the investigatory evidence, that did not "not mean that the State must [have] proceed[ed] with a transfer hearing . . . since it is a determination that is within the State's discretion to pursue." *Id.*; *see also* TEX. FAM. CODE §§ 53.04(a) ("If the preliminary investigation, required by [§] 53.01 of this code results in a determination that further proceedings are authorized and warranted, a petition for an adjudication or transfer hearing of a child alleged to have engaged in delinquent conduct or conduct indicating a need for supervision *may be made* as promptly as practicable by a prosecuting attorney who has knowledge of the facts alleged or is informed and believes that they are true.") (emphasis added). We reasoned: "while it may be correct that the State had all the evidence and witnesses to proceed with an adjudication hearing prior to N.J.T.'s eighteenth birthday, an adjudication hearing would have prevented the State from moving forward with the discretionary transfer." *In re N.J.T.*, 2021 WL 4202165, at *6; *see also* TEX. FAM. CODE

11

§§ 54.02(a)(2), (j)(3) ("The juvenile court may waive its exclusive original jurisdiction and transfer a person to the appropriate district court or criminal district court for criminal proceedings if: ... no adjudication concerning the alleged offense has been made or no adjudication hearing concerning the offense has been conducted."); 53.04(a).

### 3. Delays by the State

N.J.T. conceded that he "delayed some of the court proceedings" but contended that "these delays were inconsequential." *In re N.J.T.*, 2021 WL 420165, at *7. We did "not agree that N.J.T.'s delays were inconsequential because *each day still resulted in edging closer to his eighteenth birthday.*" *Id.* We stated that while the record showed that the state requested two resets, the record "shows an agreement by N.J.T.'s counsel as to both." *Id.* The supreme court acknowledged our rejection of N.J.T.'s argument when it noted that we "weigh[ed] the State's two hearing resets before the respondent turned eighteen against the continuances the respondent's counsel sought and ongoing court delays attributable to the pandemic." *In J.J.T.*, 711 S.W.3d at 698.

## C. Discussion

### 1. Appellant Contributed to the Delay

In this case, the record is replete with motions for continuances filed by appellant himself and agreed motions for continuances on at least eight occasions—far more than in *N.J.T.*—and each delay "result[ing] in edging closer to his eighteenth birthday." *Id.* The record provides that appellant contributed to the delay on the following dates: May 15, 2023, June 6, 2023, July 20, 2023, August 29, 2023, November 30, 2024, January 30, 2024, September 16, 2024, and October 2024. *Id.* at 697; *see also In re H.M.-L.*, No. 01-

12

24-00885-CV, 2025 WL 1335321, at *6 (Tex. App.—Houston [1st Dist.] May 8, 2025, pet. denied) (finding that the state "has no duty to prevent a defendant from causing delay"). This resulted in delays of over 270 days. Of greatest significance, appellant acquiesced to a sixty-day continuance well past his eighteenth birthday. *Id.* at 697; *see also In re L.M.B.*, No. 11-16-00241-CV, 2017 WL 253654, at *2 (Tex. App.—Eastland Jan. 6, 2017, no pet.) (deciding that "it was not practicable to proceed in juvenile court before the 18th birthday [of appellant]" and indicating "that it took into account the timing of the outcry, the court's calendar, the attorneys' calendars, the motion for continuance, and 'the time it takes to get an evaluation done'").

Furthermore, the juvenile court reset the case at least twice, resulting in a delay of 160 days, which cannot be attributed to the State. *See J.C.W.G.*, 613 S.W.3d at 567 ("The State is not responsible for court delays, which can be described as exceptional circumstances."). Thus, the motions for continuances and the juvenile court's resets resulted in a delay of at least one year and two months (430 days). *See id.*; *see also In re H.M.L.*, 2025 WL 1335321, at *8 (finding that an "overwhelming source of delay in this case was caused by" appellant, those "delays totaled nearly a year," and each delay "inched this case closer and closer to his 18th birthday"). In this regard, the Texas Supreme Court stated that reasons for delay beyond the State's control "may overcome delays attributable to the state and noted that this Court—in *In re N.J.T.*—"affirmed a transfer order" after weighing the State's two hearing resets "against continuances" appellant sought and ongoing "court delays." *See In re J.J.T.*, 711 S.W.3d at 698. Like *In*

13

*re N.J.T.*, we find appellant's continuances outweigh the delays sought by the State. *See id.*

### 2. Timing of the Crime

In *In re J.J.T.*, the supreme court recognized "the time between the commission of the offense and J.J.T.'s eighteenth birthday was relatively short, a year and four months." Thus, we find the time between the commission of the offense and appellant's eighteenth birthday—a year and nine months—relatively short. *See id.*; *see also In re B.C.*, No. 02-21-00444-CV, 2022 WL 1420533, at *5 (Tex. App.—Fort Worth May 5, 2022, no pet.) (holding that the factfinder could have reasonably concluded that any delay caused by appellant's request for jury trial and the pandemic that made jury trials impossible was beyond the State's control and that this evidence supported the juvenile court's § 54.02(j)(4)(A) finding); *In re H.M.-L.*, No. 01-24-00885-CV, 2025 WL 1335321, at *6 (noting that "there was approximately two years between the time of the alleged sexual assault—March 13, 2019—and H.M.-L.'s 18th birthday").

### 3. Law of the Parties

By a single sentence, appellant asserts that there was plenty of evidence regarding his involvement in this case such that the State was willing to proceed on the law of the parties in 2023. However, the fact that the State has "enough evidence" to proceed on other charges does not mean that it must hold an adjudication or transfer hearing as of that moment. As this Court previously stated, such hearings are "within the State's discretion to pursue." *In re N.J.T.*, WL 4202165, at *6; *see also* TEX. FAM. CODE § 53.04(a) (stating that a petition for an adjudication or transfer hearing . . . may be made as promptly

14

as practicable by a prosecuting attorney who has knowledge of the facts alleged or is informed and believes that they are true"). In this regard, the supreme court clarified that an appellate court erred in "tethering 'practicable to proceed' to the development of probable cause in evaluating whether the State proved good cause to delay prosecution under" § 54.02(j)(4)(A) because § 54.02(j)(4)(A) "makes no reference to probable cause but instead focuses on what is practicable to accomplish." *In re J.J.T.*, 711 S.W.3d at 699–700. The fact that the State may have proceeded on the law of the parties or the fact that it had "plenty of evidence" does not mean that it was practicable to proceed to trial before appellant's eighteenth birthday merely because it may have proceeded on another theory. *See id.* at 698 ("The State has considerable discretion in the manner and means of conducting its investigation."); *see also Moore*, 532 S.W.3d at 404 (providing § 54.02(j) "does not impose an arbitrary deadline for prosecutorial action"); *In re N.J.T.*, 2021 WL 4202165, at *6; *In re C.E.C.*, No. 14-25-00259-CV, 2025 WL 2673641, at *5 (Tex. App.—Houston [14th Dist.] Sept. 18, 2025, no pet.).

### 4. Juvenile Court is the Factfinder

In this case, the prosecutor testified that it was not practicable to proceed before appellant's eighteenth birthday because the State was still waiting for DNA and forensic evidence, which was essential to proving whether appellant fired the fatal shot.[5] After the State received the forensic reports, it needed more time to prepare for trial on a murder charge, which "takes a lot of time to prepare for . . . get witnesses here . . . think about

---

[5] In closing arguments, the State argued, "As far as the importance of the DNA and the forensic evidence, that was the linchpin here. It would not have been practicable for us to go forward without the DNA evidence. That was critical to our case." According to the State, this was "not just a bread[-]and[-]butter murder case."

15

your strategy." On October 16, 2024, the State explained to the juvenile court that the parties "have been involved for a period of time in negotiations," but "[o]nly recently has it become clear that there will be no deal reached on this case." The Texas Supreme Court maintained that the "State has considerable discretion in the manner and means of conducting its investigation," and "the juvenile court is charged with examining whether the exercise of this discretion devolved into unreasonable delay." *See In re J.J.T.*, 711 S.W.3d at 698. "As the factfinder, the juvenile court determines the credibility of the witnesses and the weight to accord their testimony," and we must defer to such factfinding. *Id.*

Appellant argues that the "State's reliance on pending lab results was outside of [his] control and not caused by [him] or his family." However, the statute does not require the State to show that any delay was caused by appellant or within his control to satisfy the impracticability requirement. *See* TEX. FAM. CODE § 54.02(j). Nonetheless, we determined that appellant contributed to the delay on numerous other occasions.

Appellant further argues that the delay is attributable to the State because the DPS lab is within its control. Appellant does not provide us with authority that third-party contractors, such as investigatory lab testing departments, have been identified as "the state" under the Texas Family Code for purposes of § 54.02(j)(4)(A). The Texas Court of Criminal Appeals noted that in the context of *Brady* violations, the State includes "other lawyers and employees in his office and members of law enforcement connected to the investigation and prosecution of the case" because Article 34.19 expressly requires that the State provide the defendant with discovery in its "possession, custody, or control of

16

the state, *or any person under contract with the state*" for purposes of *Brady*. *See Moore*, 532 S.W.3d at 404. However, this is not a *Brady* violation, and the Texas Supreme Court has not held that, under § 54.02(j)(4)(A), the "State" includes third-party contractors, such as investigatory lab testing departments. Furthermore, the Legislature did not include "or persons under contract with the state" in the Family Code as it did in the criminal code. *Compare* TEX. FAM CODE § 54.02(j)(4)(A) *with* TEX. CODE CRIM. PROC. art. 39.14(a); *see also Moore*, 532 S.W.3d at 403 (providing that when interpreting a statute, we must "give effect to the plain meaning of the text of a statute").

Even assuming that the DPS lab is attributable to the state, we note that the trial court reset the case for 160 days, and appellant requested several continuances. Again, reasons for delay beyond the state's control overcome delays attributable to the state. *See In re J.J.T.*, 711 S.W.3d at 697; *In re H.M.-L.*, 2025 WL 1335321, at *8 ("But even attributing these few months [of] delay caused to the State, we conclude that, in this case, the "reasons for delay beyond the state's control . . . overcome delays attributable to the state.").

### 5.    Summary

Considering all the evidence presented at the hearing and relying on *In re N.J.T.*, as we must, we conclude that the juvenile court could have found, by a preponderance of the evidence, a "reason" "beyond the control of the State" for why it was "not practicable to proceed in juvenile court" before appellant's birthday. *See In re A.M.*, 577 S.W.3d at 672 (providing that "the State need only make a showing of the reason by a preponderance of the evidence"); *see also In re J.J.T.*, 711 S.W.3 at 698 ("[S]uch fact-

intensive determinations rest with the juvenile court."). Deferring to the juvenile court as we must, we find there is more than a scintilla of evidence to support the juvenile court's finding. *See In re A.M.*, 577 S.W.3d at 659. Accordingly, we conclude that the juvenile court's decision to transfer appellant to criminal district court for prosecution as an adult was not arbitrary but instead represented a reasonably principled application of the legislative criteria found in section 54.02(j)(4)(A). *See* TEX. FAM. CODE § 54.02(j). We overrule appellant's sole issue.

## 6. Dissent

The dissent recites the facts surrounding the murder and aggravated assault with a deadly weapon, which it states demonstrated the investigation advanced rather quickly. However, § 54.02(j)(4)(A) is not conditioned on the timing of finding probable cause or disposing of the case at the earliest possibility. *See In re J.J.T.*, 711 S.W.3d at 696. Although the dissent faults the State for its actions throughout the prosecution of this case, there are no probable-cause or due diligence parameters when determining a state's motion to transfer under § 54.02(j)(4)(A). *Compare* TEX. FAM. CODE § 54.02(j)(4)(B) *with* § 54.02(j)(4)(A). The parties did not argue § 54.02(j)(4)(B) in the trial court, and the trial court expressly waived its jurisdiction under § 54.02(j)(4)(A). *See* TEX. R. APP. P. 33.1 (requiring that appellant preserve issues for appellate review).

By enacting a section without the requirements of probable cause and due diligence, the Texas Legislature created another pathway for the State to procure a waiver of the juvenile court's jurisdiction to transfer a person to a district court for criminal proceedings. *In re J.J.T.*, 698 S.W.3d 320, 333 (Tex. App.—Houston [1st Dist.] 2023),

18

*rev'd*, 711 S.W.3d 687 (Tex. 2025) (Farris, J., dissenting). The statute gives a juvenile court discretion to consider reasons—other than probable cause—in evaluating whether the State met its burden to show that it was not practicable to proceed before appellant's eighteenth birthday.

The dissent relies on a "buried" DNA laboratory report—that was not brought to the trial court's attention and on which there is no testimony as admitted by the dissent—and the dissent's perceived "false impression." However, appellant does not advance, address, or even mention this in his brief. *See* TEX. R. APP. P. 33.1. "It is the [a]ppellant's burden to discuss h[is] assertions of error," and the appellate court "has no duty—or even right—to perform an independent review of the record and applicable law to determine whether there was error" as "we would be abandoning our role as neutral adjudicators and become an advocate for that party." *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.). "We [should] not brief appellant's case for him." *Heiselbetz v. State*, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995).

Even assuming this fact was brought to the trial court's attention, a trial court does not abuse its discretion by basing its decision on conflicting evidence. *Bell v. State*, 649 S.W.3d 867, 887 (Tex. App.—Houston [1st Dist.] 2022, pet. ref'd). "As with any decision that lies within the trial court's discretion, the question is not whether we might have decided the issue differently." *In re A.M.*, 577 S.W.3d at 659. "By contrast, a waiver decision representing a reasonably principled application of the legislative criteria generally will pass muster under this standard of review. [A] juvenile court that shows its

work should rarely be reversed." *In re C.M.M.*, 503 S.W.3d 692, 701 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (cleaned up).

## V. CONCLUSION

We affirm the judgment of the trial court.

JAIME TIJERINA
Chief Justice

Dissenting Memorandum Opinion
by Justice Jenny Cron.

Delivered and filed on the
15th day of January, 2026.